J. Minos SIMON, Plaintiff-Appellant,

v.

UNITED STATES of America et al., Defendants-Appellees.

No. 80–3122.

United States Court of Appeals, Fifth Circuit.

May 7, 1981.
Rehearing Denied June 9, 1981.

J. Minos Simon, Lafayette, La., for plaintiff-appellant.

D. H. Perkins, Jr., Frances O. Allen, Asst. U.S. Attys., Shreveport, La., for the U.S.

Voorhies & Labbe, H. Lee Leonard, Lafayette, La., for Neal.

Before GEE, TATE and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Simon appeals from the dismissal of his suit against (a) the defendant Neal, a private attorney, and (b) five feder-

al officers (four deputy United States marshals and an FBI officer).[1] The essential cause of action alleged against them is that the defendants violated Simon's Fourth, Fifth, and Sixth Amendment rights by conspiring to have issued and served in Louisiana a falsified or invalid subpoena for Simon to appear as a witness in a federal trial in Georgia, which ultimately led to his arrest, search, and imprisonment in Georgia. Federal jurisdiction is asserted on the basis of 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship). Suit was brought in federal district court in Louisiana.

The district court granted summary judgment dismissing Simon's suit against the federal officers because the factual showing disclosed no irregular activity on their part. The district court dismissed the suit against Neal without prejudice on finding that Neal committed no act in Louisiana and had such minimal connexity with the forum state that the Louisiana long-arm statute, La. R.S. 13:3201, did not permit a court in Louisiana to exercise personal jurisdiction over him for the acts complained of. We affirm the dismissal as against the federal officers. However, we reverse the dismissal as against Neal on the personal jurisdiction issue, holding that an act in Louisiana for which Neal was responsible was a cause-in-fact of the tortious injury alleged by the complaint.

*Context Facts*

The record contains full development of the relevant facts, primarily by depositions. The record shows:

1. Other codefendants had also been dismissed: A federal judge then sitting in Atlanta, on the grounds of judicial immunity; and the United States, sued under the Federal Tort Claims Act (false imprisonment), 28 U.S.C. § 1346(b), 28 U.S.C. §§ 2671 et seq., dismissed on the ground that at the time of the 1973 arrest no tort claim against the United States was authorized on this ground. *See* 28 U.S.C. 2680(h) (as enacted in 1948, prior to its nonretroactive amendment in 1974). We do not read the issues presented by the plaintiff-appellant's brief as questioning these rulings.

2. The subpoena was to be served on *Minor Simone*; 1408 *Pinbrook* Road; *Baton Rouge,*

The plaintiff-appellant, J. Minos Simon, alleges that attorney James Neal, while serving as a defense counsel in a criminal case in federal court in Atlanta, Georgia, intentionally had issued a subpoena with Simon's incorrect name and address in Louisiana.[2] This subpoena was issued on February 13, 1973, compelling Simon to appear as a defense witness in Atlanta on February 22, 1973. This (at best) careless mistake in completing the subpoena set in motion a stream of incidents leading to a very disagreeable experience for Simon, an attorney in Lafayette, Louisiana.

As a result of the incorrect information on the subpoena, Simon was unable to be served. Nevertheless, on February 23, 1973, defense attorney Neal also incorrectly informed Judge Manuel L. Real (the presiding judge in the Atlanta criminal trial) that Simon had been served, although in actuality he had not and his nonappearance was thus not due to any deliberate failure to respond to the subpoena (as implied by Neal).

Because Simon had not been served by February 22 (when he was supposed to appear) with the subpoena issued on February 13, Chief Deputy U.S. Marshal Leonard Herndon (of Atlanta, Georgia) telephoned Chief Deputy U.S. Marshal Emmett Wyche[3] in Shreveport, Louisiana, to aid in obtaining service on Simon. Chief Deputy Wyche relayed the subpoena information to Deputy U.S. Marshal Byron J. Schiller in Lafayette, Louisiana, who wrote out a "sub-

Louisiana. The subpoena should have been drafted to read: *J. Minos Simon,* 1408 *Pinhook* Road; *Lafayette,* Louisiana. The subpoena had been thus erroneously completed by one of Neal's associate lawyers. Due to this mistake (which Simon alleges to have been intentional rather than grossly negligent), the federal marshals in Baton Rouge were unable to make service on this unknown person at this nonexistent Baton Rouge address.

3. Although Simon alleges in his appellate brief that Wyche was part of the conspiracy, Wyche was not made a defendant in either plaintiff's original complaint or amended complaint.

poena ticket"[4] on February 23, directing Simon to appear in Atlanta on February 25.

Simon was eventually served with the subpoena ticket in Lafayette on the afternoon of Sunday, February 25, 1975, by Deputy U.S. Marshal James Griffin. When Simon informed Marshal Griffin that it was impossible for him to appear in Atlanta that evening, the complaint alleges that Griffin responded that it would suffice if Simon would appear the next day, Monday, February 26, 1973.

Simon was unable to depart for Atlanta the following morning due to a state court appearance that had been previously scheduled for that day. It was when state Judge Edmond Guidry contacted Judge Real's office to resolve the conflict in appearances that Simon ascertained that Judge Real, apparently under the impression that Simon had been served and was avoiding compliance with the subpoena, had already issued a bench warrant for his arrest.

Simon immediately left for Atlanta, where he was arrested by Deputy U.S. Marshals William Floyd and J. Elmer Dilbeck, and FBI Agent Earl Petersen. He was subsequently jailed, placed in isolation, and subjected to a strip search. He was released from custody the next day (Tuesday, February 27, 1973) and the bench warrant ordering his arrest was vacated by Judge Real after it was learned that Simon was not avoiding service and had in fact attempted to respond to the subpoena ticket actually served on him.

The cause of action before us on this appeal is Simon's complaint of conspiracy, including misrepresentations, leading to his arrest and search without probable cause and wrongful imprisonment, among the following defendants: (a) Neal, the Tennessee attorney defending in a federal criminal trial in Georgia; (b) FBI Agent Petersen, then acting in Georgia; (c) federal marshals Floyd and Dilbeck, who executed the bench warrant in Georgia; and (d) federal marshals Schiller and Griffin, who allegedly knew of the invalidity of the subpoena ticket typed by them (per telephone instructions) and served by Griffin. *Before continuing, we note that the damages alleged by the complaint are solely those resulting from Simon's allegedly wrongful arrest, search, and imprisonment.*

Simon emphasizes certain alleged deficiencies in the subpoena ticket that was ultimately served on him in Louisiana: *a.* It was based, not on a new subpoena issued commanding him to appear in court in Atlanta, but instead on the pencilled-in addition of a new date on the original subpoena commanding him to appear at 9:00 a. m. on February 22, (already past); *b.* the subpoena ticket issued in Louisiana (per telephone conversation with Georgia-based officers) commanded Simon to appear "before said [Atlanta federal] court at *Atlantan Hotel, Atlanta, Ga.* at _____ [left blank] P.M. on the 25th day of February [a Sunday], 1973." Simon contends that the subpoena ticket, requiring him to appear at an unspecified p. m. hour at a hotel (not in court), was invalid on its face, as well as unauthorized (not being based on an actual subpoena for his appearance on February 25), and that the federal officers knew or should have known this. As noted, he also contends (although the federal officer disputes this) that a Lafayette federal marshal had incorrectly told him, after service of the subpoena ticket on Sunday, February 25, that he could delay his appearance in Atlanta until Monday evening, February 26 (Simon having explained the necessity for his state court appearance Monday morning).[5]

---

4. The record reflects that this is a subpoena form prepared by a local marshal for service within his district upon telephoned instructions from another district, based upon a subpoena previously issued in that other district to compel the witness's attendance at a trial there.

5. Simon also alleges that Marshals Griffin and Schiller slandered his name in their attempt to gain service of the subpoena. We need not address this issue for Simon has neither established a federal cause of action upon which such a claim could be based, nor asserted this claim on the basis of diversity. Nor do his allegations or showing permit the conclusion that Neal could have knowingly conspired that the federal marshals would incidentally have made the alleged slanderous comments in the course of serving Simon or attempting to do so.

On these facts, produced principally by deposition, the plaintiff Simon, whom the record shows to be a prominent and reputable attorney in Lafayette, Louisiana, not unreasonably feels outraged to have been subjected to the arrest, strip search, and seemingly unnecessary detention in a jail following his arrival in Atlanta, stemming initially from (at best) a mistake on the part of Neal's associate in misaddressing the original subpoena. Simon also points out several adverse or false comments to the federal judge by Neal in court or in chambers (in Georgia) that led the federal judge to believe Simon was attempting to evade service and, thus, to eventually issue the bench warrant that led to the Georgia arrest, strip search, and imprisonment.

### The Issues

The issue before us, however, is not whether Simon has shown any cause of action whatsoever. Rather, it is: (1) As to the federal officers, whether he has shown any cause of action of which a federal court has jurisdiction, or at least any disputed issue of material fact that precludes summary judgment in their favor; and (2) as to the defendant Neal, a Tennessee citizen who performed various allegedly wrongful acts in Georgia, whether Simon has shown a basis for a federal court in Louisiana to exercise personal jurisdiction over the cause of action Simon alleges against him.

### I. The Cause of Action: In General

The sole damages claimed by Simon's complaint are those resulting from his allegedly wrongful arrest, search, and imprisonment in Georgia as a result of the bench warrant issued in Georgia by a federal judge there sitting. The record reflects no invalidity or impropriety in the issuance of the bench warrant itself, nor in the arrest pursuant thereto in which the three Georgia federal officers participated. The federal trial judge, acting within his authority, issued the bench warrant after a witness had thrice failed to appear at the trial, on representations made to him (and apparently true, although explainable in fact) that the witness (an attorney) had initially evaded service and subsequently had, *after* service, failed to appear.[6] Likewise, after execution of the bench warrant, neither the search nor the detention are shown to have been invalid or illegal, albeit perhaps inappropriate.

The thrust of the cause of action alleged against the present defendants is that they knowingly conspired to cause the federal judge to issue the bench warrant.

With regard to Neal, the showing arguably supports conduct causing tortious injury: Neal implied to the judge on one occasion that Simon was evading service (of a subpoena sent to the wrong district about which Simon did not know), and on the second occasion of Simon's nonappearance the following day Neal incorrectly stated that service had finally been made by the FBI (when in fact the federal marshals had not yet received the replacement subpoena ticket).[7] When Simon did not appear on yet a third day (the Monday following the alleged service on Friday), despite the service upon him on Sunday of the replacement subpoena ticket, the judge was understandably goaded into issuing the bench warrant. Likewise, Neal's fault in misaddressing the first subpoena and in causing a subpoena ticket of doubtful validity to issue (*see* notes 8 and 12) undoubtedly precipitated the issuance of the bench warrant because of Simon's failure to respond to such process.

As to the five federal-officer defendants before us, however, their connection with the allegedly unwarranted issuance of the

6. *See* Black's Law Dictionary (5th ed., 1979), verbo "bench warrant":

Process issued by the court itself, or "from the bench," for the attachment or arrest of a person; either in case of contempt, or where an *indictment has been found,* or to bring in a witness who does not obey the subpoena.

7. For present purposes, Neal's possible good faith is immaterial in his assumption of evasion and his subsequent misstatement that service had been accomplished.

bench warrant is much more tenuous. The plaintiff Simon's conclusory allegations that they acted in concert with Neal is negated by the record, which reflects that none of them had communications with Neal or his staff. The papers they served or executed were so done as directed by their superiors in apparent compliance with orders of a federal court. With regard to the Louisiana marshals, the plaintiff Simon contends that they knew or should have known that the subpoena ticket prepared and served by them was invalid. We doubt that any tortiously causal significance with regard to the issuance of the bench warrant may be attached to the *service* of the allegedly defective subpoena ticket (which had been prepared as directed by their superior, *see* note 8), to which Simon failed to respond, albeit Simon's failure to appear on Monday after its issuance and service was the ultimate event precipitating the bench warrant. Even if causal significance can be attached, however, no claim is asserted

against these Louisiana federal officers that is cognizable by a federal court (*see* Part II *infra*).

Before discussing the federal claims against the federal-officer defendants (*see* Part II *infra*) and the jurisdictional issue with regard to Neal (*see* Part III *infra*), it may be appropriate to discuss the indefinite, if not invalid, subpoena ticket prepared and served by the Louisiana marshals (as directed by their superior), ordering Simon to appear at an uncertain p. m. hour at a hotel in Atlanta on a Sunday evening when court was not in session. We set forth in the margin the circumstances of its issuance.[8] Simon, as an able lawyer, properly felt the validity of this subpoena was highly questionable, especially since he was unable by telephone that Sunday to locate anyone at the hotel who had any knowledge of it. *See* notes 11 and 12. It is doubtful that Simon could have been held in contempt for failing to respond to it. Nevertheless, as to

---

**8.** The subpoena ticket issued for Simon's appearance at an Atlanta hotel on a Sunday evening is shown by the record to have been thus issued on the basis of a telephone conversation on the morning of Friday, February 23, between Chief Deputy Marshal Herndon of the Northern District of Georgia (who, was in Atlanta, Georgia) and Chief Deputy Marshal Wyche of the Western District of Louisiana (who was in Shreveport, Louisiana). Neither of these individuals are named as codefendants, although specifically or by implication they are indicated to be coconspirators. In his deposition, the Louisiana marshal (Wyche) testified that he had instructed his subordinates (deputy marshals Schiller and Griffin, codefendants) to prepare the subpoena ticket in the form it appeared on telephone instructions from the Georgia chief deputy marshal (Herndon): Herndon had advised Wyche to have the witness Simon be subpoenaed to appear at the Atlantan Hotel, Atlanta, Georgia, on the afternoon of Sunday, February 25, to confer that afternoon with the codefendant Neal, the private attorney for the criminally accused in the suit. Tr. 752, 758–59. According to Wyche, Herndon in the latest of a series of calls told him: "Emmett [i. e., Wyche], issue a subpoena ticket for Mr. Simon to report to the Atlantan Hotel on Sunday, the 25th, in the late afternoon and contact James F. Neal, attorney for the defendant, at your arrival." Tr. 758–59. As Simon contends, a permissible factual inference (for purposes of summary judgment) is that the Georgia marshal (Herndon) issued those instructions after consultation with the

defendant Neal, who had issued the original subpoena and who had requested the assistance of the federal court to secure Simon's attendance at the trial when the original subpoena was not served (due to Neal's faulty insertion of a nonexistent address, as it turned out, rather than due to any evasion by Simon, as implied by Neal at the Georgia trial).

However, for purposes of the claim against the federal officers now before us (*i. e.*, the Georgia FBI agent, the two Georgia deputies, and the two Louisiana deputies), the record is devoid of any indication that the Georgia officers even knew of the subpoena ticket or that the Louisiana officers did anything other than complete and serve a subpoena as directed by their Louisiana superior. As to the Louisiana officers, in their depositions Griffin was not questioned as to the alleged deficiency of the subpoena in directing a witness to report to a hotel instead of to a court, but in Schiller's deposition (where the issue was lightly touched upon) it was indicated that subpoenas given to marshals to serve may direct the witness to report to a non-court place, *see* Tr. 723–26, apparently referring to subpoenas to attend discovery depositions, *see* Fed.R.Crim.P. 17(f)(2). With regard to the present federal-officer defendants, under the circumstances noted, we regard the alleged bad faith or improper motive at the Georgia end in the issuance of the subpoena ticket as irrelevant to the cause of action asserted against them.

the two Louisiana marshals who prepared and served it on directions of their superior, it was not unusual for them to serve subpoenas directing persons to appear at a place other than in court (*see* note 8). These officers had no reason to question the validity of the subpoena ticket issued and served by them as directed by their superior.

## II. *The Cause of Action Against the Five Federal-Officer Defendants*

The district court granted summary judgment in favor of the federal-officer defendants on the basis of their qualified immunity from suit for official actions taken in good faith. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The plaintiff Simon forcefully contends that the factual contentions that there existed a knowing conspiracy to violate his constitutional rights, and that the federal officers knew or should have known of the deficiency of the subpoena ticket they attempted to serve (*see* note 8), preclude summary judgment on the issue of their good faith in assisting the defendant Neal in conduct that resulted in the deprivation of the plaintiff Simon's constitutional rights. *See, e. g., Slavin v. Curry*, 574 F.2d 1256 (5th Cir.1978).

The depositions and other factual evidence show no more than that the acts complained of were performed by these federal defendants on orders of their superiors: the Louisiana marshals (Schiller and Griffin) served the defendant Simon with a subpoena ticket that was apparently based upon a previously issued subpoena (*see* note 8); the Georgia marshals (Floyd and Dilbeck) and the Georgia FBI agent (Petersen) arrested Simon in the execution of a bench warrant valid on its face.

The plaintiff Simon's cause of action is asserted as a *constitutional tort*, a violation of a specific federal constitutional guarantee by a governmental agent acting under claim of federal authority. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91

S.Ct. 1999, 29 L.Ed.2d 619 (1971). The damages asserted arise out of an allegedly unconstitutional arrest, search, and imprisonment.

■ These damages resulted, however, pursuant to the execution of a bench warrant that was valid on its face. The arrest, search, and detention of the plaintiff Simon by these federal officers is thus not shown to have been unconstitutional or to have violated any constitutional right of the plaintiff Simon so as to give rise to an action based upon a constitutional tort. *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977) (en banc).

Thus, the complaint fails to state a claim of which a federal court has jurisdiction, insofar as recovery is sought against the five federal-officer defendants for a constitutional tort for their above-specified acts performed under claim of federal authority. *Rodriguez v. Ritchey, supra*. A federal officer does not violate the Constitution when he executes a warrant valid on its face, nor when he serves a subpoena as directed by his superiors. We prefer to rest our affirmance of the dismissal of the claim against these officers on these grounds rather than on their good-faith immunity. We might add, however, that the record is devoid of any intimation that these defendants did other than act in good faith in serving process (*see* note 8) and in executing the facially valid bench warrant. *See also Turner v. Raynes*, 611 F.2d 92 (5th Cir. 1980).

## III. *Personal Jurisdiction over the Defendant Neal*

The cause of action alleged against the defendant Neal is that he, in conspiracy with various federal officers, caused Simon's unlawful arrest, search, and detention without probable cause. The plaintiff seeks damages arising from the arrest, as well as from the resulting publicity in Louisiana concerning the Georgia arrest.[9]

---

**9.** See the Second and Third Causes of Action, original complaint, Tr. 10–17, and Supplemental Complaint, Tr. 469. On appeal, the plaintiff Simon's brief also argues certain damages aris-

The parties agree that the central issue concerns the application, if any, of the provision of the Louisiana long-arm statute that Louisiana may exercise personal jurisdiction over a nonresident as to "a cause of action arising from the nonresident's ... causing injury or damage by an offense or quasi offense *committed through an act or omission in this state* [Louisiana]." La.R.S. 13:3201(c) (emphasis added).[10] In resolving this issue, not only the well-pleaded allegations of the complaint may be considered, but also factual showings made by way of depositions, affidavits, and exhibits adduced in the trial of the issue. *Edwards v. Associated Press*, 512 F.2d 258, 262 (5th Cir.1975); 5 Wright & Miller, Federal Practice & Procedure § 1351, at 565–66 (1969).

Most of the defendant Neal's wrongful acts leading to the Georgia bench warrant and Georgia arrest occurred in Georgia—his misleading and incorrect statements that Simon had evaded service and that service had been made; his misaddressing of the first subpoena; his allegedly improper procurement of the subsequent subpoena ticket. The allegedly wrongly-induced arrest itself occurred in Georgia, as did most of the damages asserted. The subsequent widespread publicity in Louisiana of the Georgia arrest of a prominent Louisiana attorney, while an incident of damages potentially recoverable for the tort asserted to have been committed by Neal, is of course not attributable to him as *his* act in Louisiana.

Simon has made sufficient factual showing that the acts of the Louisiana federal marshals in serving or attempting to serve subpoena(s) in Louisiana are attributable to Neal, who procured the(ir) issuance, at least for purposes of exercising personal jurisdiction over Neal for the tortious injury resulting from the form in which the marshals served or attempted to serve the process. *See* note 8. The only two acts so committed by Neal in Louisiana were: (a) The attempted service of the incorrectly addressed initial subpoena (*see* notes 2 and 11)—the failure to serve which in Louisiana caused Simon's initial failure to appear at the Georgia trial (and contributed to influencing the Georgia federal judge in his ultimate belief that Simon was a recalcitrant witness against whom a bench warrant should be issued); and (b) the service of the (deficient) subpoena ticket (*see* notes 8 and 12) on Simon in Louisiana, which Simon may have felt could not compel him to present himself at a Georgia hotel at an indefinite Sunday evening hour for the unauthorized purposes of a private attorney. As to (b), Simon's failure to appear at the trial on Monday morning in response to the subpoena ticket was undoubtedly the precipitating factor in the judge's issuance of the bench warrant. The Georgia federal district judge himself stated in his deposition taken by Simon: "The issuance of the bench warrant was based upon the fact the subpoena *had* [emphasis ours] been served and that it was time to call you [Simon] as a witness and you were not present." Tr. 690.

The issue before us, it is to be remembered, is not whether the cause of action alleged by Simon states a valid claim in tort. It is, instead, whether a tribunal sit-

ing out of allegedly defamatory utterances by the federal officers in Louisiana, argued as attributable to Neal, their coconspirator. Aside from the lack of factual connexity of these comments with Neal as shown by the record (*see, e. g.*, note 5 *supra*); the complaint does not pray for damages for any such defamatory comments. *See* Tr. 19.

10. The purpose of the Louisiana "long-arm statute" was to allow Louisiana courts to exercise the broadest basis of personal jurisdiction over nonresidents permissible under the due process standards of the Fourteenth Amendment. *Adcock v. Surety Research*, 344 So.2d 969 (La.1977); *see e. g.*, *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630 (5th Cir.1980); *Soileau v. Evangeline Farmer's Co-op*, 386 So.2d 179 (La.App.1980). Louisiana courts have consistently found its long-arm statute applicable, and constitutionally permissible, where a single act in Louisiana, by a person or thing for which the nonresident tortfeasor is responsible, contributes to the injury. *See, e. g., State Farm Mutual Automobile Insurance Co. v. Vidrine*, 348 So.2d 422 (La.App.1977); *Jones v. Davis*, 233 So.2d 310 (La.App.1970), *writ refused*, 256 La. 80, 235 So.2d 101 (1970).

ting in Louisiana can exercise personal jurisdiction over the nonresident Neal for injury to Simon resulting from the tort.

■ The Louisiana long-arm statute purports to confer jurisdiction over a nonresident as to "a cause of action arising" from tortious injury "committed through an act or omission" in Louisiana. The tortious injury alleged is based upon Neal's wrongful acts in influencing the trial judge to issue a bench warrant because of Simon's perceived refusal to obey subpoena(s) previously issued for him to appear at the trial (see note 6), when in fact and in law Simon had valid reasons not to appear.[11] This sufficiently states a prima facie case of tortious injury for purposes of deciding the jurisdictional issue. See, e. g., Jetco Electronics Industries, Inc. v. Gardiner, 473 F.2d 1228, 1232 (5th Cir.1973); 4 Wright & Miller, supra, § 1068 at 250. The narrow issue to be decided, then, is whether the torts alleged as a cause of action may be said to have been "committed through an act or omission" in Louisiana.

As we have previously noted, the precipitating cause of the issuance of the bench warrant against Simon, and his subsequent arrest and the damages thereby resulting, was Simon's failure to respond to the subpoena ticket served upon him in Louisiana. The subpoena ticket, prepared pursuant to instructions of the defendant Neal, ordered Simon to appear at a hotel in Atlanta at an indefinite hour on a Sunday evening; although supposed to have been based on the initial legally authorized subpoena directing Simon to appear at the trial in the courthouse, the subpoena ticket in actuality was designed to afford Neal pretrial discovery of Simon's testimony (see note 8), and it was not an authorized use of the subpoena process.[12] Simon's failure to respond to this unauthorized process issued at Neal's direction, although understandable,[13] caused the issuance of the bench warrant, allegedly wrongly induced by this circumstance as well as by Neal's various alleged misrepresentations to the judge in Georgia.

■ Thus, the service in Louisiana of the subpoena ticket, improperly issued (see note 12) at the direction of Neal, was a cause-in-fact, or substantial factor, in the tort by Neal alleged as a cause of action in Simon's complaint. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).[14] The fact that

11. To reiterate: Due to Neal's fault in misaddressing the original subpoena, the federal marshal of the Baton Rouge district had been unable to locate the person named in it, which was the cause of Simon's first failure to appear at the trial as expected. Due to Neal's improper and unauthorized use of the subpoena ticket later served on Simon on Sunday (see note 12 infra), Simon had valid reasons to believe the subpoena ticket (see note 8 supra) was ineffectual and that he could not be held in contempt for failing to respond to it.

12. In criminal proceedings, depositions may be taken only in exceptional circumstances upon order of court and after notice to the other parties; and the only authorized purpose is to preserve evidence, not to afford discovery. Fed.R.Crim.P. 15(a), (b); 1 Wright, Federal Practice & Procedure §§ 241, 242 (1969).

13. After service on Sunday afternoon, Simon attempted unsuccessfully to telephone the judge or some representative of the court, as well as anyone at the hotel (including the defendant Neal) with knowledge of the subpoena. The following morning (Monday) he was able to get in touch with the Georgia federal district judge by telephone from the Louisiana state

judge's office (Simon was in the midst of a state trial) and, upon being informed that a bench warrant had been issued, immediately departed for Atlanta, where he was arrested. Confronted with a subpoena ticket that Simon (as a skilled lawyer) knew had been invalidly issued for an unauthorized purpose, Simon not unreasonably felt that it was not contemptuous of the court's authority not to respond until the validity of the subpoena request had been ascertained from the judge himself.

14. This seminal decision on tort causation in Louisiana established that a defendant's wrongful conduct is a legal cause of the harm sustained if it is both (a) a cause-in-fact of the harm (defined as "a substantial factor in bringing about the harm," Dixie Drive It, supra, 137 So.2d at 302) and (b) a breach of a duty that includes within its scope protection against the harm encountered. For purposes of decision of the personal jurisdiction issue solely before us (and in the absence of an issue of dismissal for failure to state a claim), a prima facie case has been made out that the cumulative misconduct of Neal in inducing an issuance of what in actuality was an improvident bench warrant was a causal breach of duty with regard to the

the federal marshals who served the legally unauthorized subpoena ticket were themselves innocent of participation in Neal's knowing misuse of process does not insulate Neal from responsibility for their acts in Louisiana directly resulting from his negligence or intentional misuse of process. *Cf. Aucoin v. Hanson*, 207 So.2d 834 (La.App. 3d Cir.1968) (nonresident subjected to Louisiana personal jurisdiction on the basis of a telephone call from out-of-state into Louisiana initiating a transaction). If, for instance, a tortfeasor used a commercial messenger (ignorant of the contents of the message delivered) to lure a Louisiana resident into Mississippi for the purpose of committing a tort upon him in Mississippi, the act of the messenger in delivering the message is no less the act of the tortfeasor than if the tortfeasor had himself personally delivered the message.

■ The determination whether, by virtue of La.R.S. 13:3201(c), the federal court in Louisiana had personal jurisdiction over the nonresident Neal with regard to the cause of action alleged, involves a dual inquiry: First, whether the state statute provides for the assertion of jurisdiction in the context of the acts before the court; and second, whether the exercise of the jurisdiction thereby asserted comports with due process under the federal Constitution. *See, e. g., Rebozo v. Washington Post Co.*, 515 F.2d 1208 (5th Cir.1975); *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir.1973).

For the reasons noted, we find that personal jurisdiction in Louisiana is properly asserted under authorization of the cited statute.

■ Nor is federal due process offended by requiring the nonresident defendant to respond in the courts of Louisiana for damages resulting to a Louisiana resident from the service through (unknowing) federal officers of legally unauthorized process in Louisiana upon a Louisiana resident. The due process test [15] is here met: Sufficient connexity between the nonresident defendant and Louisiana, the forum state, is shown so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice; the affiliating circumstances of the defendant-directed conduct in Louisiana, and its quality and nature with regard to the cause of action alleged, are such that it is reasonable and fair to require the defendant to conduct his defense in Louisiana.

*Conclusion*

In sum, we AFFIRM the dismissal of the plaintiff's suit against the five federal officers on the ground that no claim of constitutional tort cognizable in federal court is shown as against them, but we REVERSE the dismissal for lack of personal jurisdiction of the suit as against Neal, finding that the conduct in Louisiana for which he was responsible was a substantial causal factor in producing the tortious injury alleged. The suit as against Neal is remanded to the district court.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

damages sought by the cause of action alleged by the complaint.

**15.** *See World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 494–99 (1974).