**Philip A. SCHLEIT, Plaintiff,**

v.

**Herbert A. WARREN, and Richard A. Warren, Defendants.**

**Civ. A. No. 88-0445-A.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 17, 1988.

---

417

Philip A. Schleit, Washington, D.C., pro se.

Janice Murphy, Fairfax, Va., for defendants.

MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court on the defendants' Motion to Dismiss the Complaint. For the reasons set forth below, the Motion is denied.

I

*Background*

The defendants, Herbert A. Warren and Richard A. Warren ("Warren"), are Florida attorneys who represented Rene Zambrana in a 1983 libel suit against Philip A. Schleit

("Schleit") and his publisher.[1] Schleit had written a book, entitled *Shelton's Barefoot Airlines,* which allegedly contained defamatory statements about Mr. Zambrana. Pursuant to the Florida long-arm statute, Schleit was served with process in Virginia, where he resides, and in Washington, D.C., where he is employed. Plaintiff protested the original service as based on false affidavits, but alleges he accepted reservice under duress, in exchange for vacating a default judgment entered on the invalid original process. On May 4, 1987, following a jury trial, verdicts were entered in favor of Schleit and his publisher.

On April 15, 1988, Schleit filed a Complaint in this court, alleging malicious prosecution and abuse of civil process against the attorneys for Mr. Zambrana. Specifically, Schleit alleges five claims in his Complaint.[2] Defendants have filed a Motion to Dismiss on the grounds that this court lacks *in personam* jurisdiction. In support of the motion, defendants argue that this court cannot assert jurisdiction over them because they are not residents of Virginia, did not directly commit an act in this state, and are not vicariously liable for the alleged tortious conduct of process servers in Washington, D.C. and Virginia. Alterna-

tively, defendants contend that venue is inconvenient in this forum.

Plaintiff argues in opposition that the court has *in personam* jurisdiction over defendants pursuant to Va.Code § 8.01–328.1(A)(3) of the Virginia long-arm statute. In addition, plaintiff also argues that Virginia is a convenient forum.

## II

### *Jurisdiction*

The narrow issue before the court is whether a party's service of abusive process confers jurisdiction over that party in the forum where process is served, under Va.Code § 8.01–328.1(A)(3).[3]

Under the Virginia long-arm statute,

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: ...

3. Causing tortious injury by an act or omission in this Commonwealth.

Va.Code § 8.01–328.1(A)(3) (1984 & Supp. 1987).

When a party asserts jurisdiction pursuant to a long-arm statute, a dual analysis is normally required.[4] *Wolfe v.*

---

1. The case was *Zambrana v. Schleit & Fishergate Publishing Co., Inc.,* Case No. 83-25303 CA(26), filed in the Circuit Court of the 11th Judicial District of Florida in and for Dade County, Florida. The case was later removed to the United States District Court for the Southern District of Florida.

2. The five counts of the Complaint allege the following:
   I—malicious prosecution
   II—frivolous Florida suit/abuse of civil process in the District of Columbia and Virginia
   III—loss of potential book sales
   IV—abuse of civil process in the District of Columbia (false affidavit of service)
   V—abuse of civil process in Virginia (false affidavit of service).

3. The court expresses no opinion on the underlying merits of this action, since "[a] complaint should not be ... dismissed merely because the court doubts that the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted." *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982). Here, the plaintiff has alleged the existence of an unverified and frivolous

complaint in the Florida action (signed by one of the defendant attorneys), a high percentage contingent fee arrangement, a failure to engage in a prefiling and postfiling inquiry of the facts underlying the Florida action, and service on the plaintiff by duress through false affidavits. In essence, plaintiff alleges that the present defendants were *de facto* plaintiffs in the Florida lawsuit, by virtue of their complicity with Zambrana. The plaintiff has met his burden of colorably stating facts which support his claims. *See generally Cramer v. Crutchfield,* 496 F.Supp. 949 (E.D.Va.1980), *aff'd,* 648 F.2d 943 (4th Cir.1981) (Virginia law on abuse of process requires improper motive on part of the defendant and an act in the use of process not proper in regular prosecution of the proceeding, while malicious prosecution requires that the prosecution be set on foot by the defendant, terminate favorably for the plaintiff, be instituted or procured by the cooperation of the defendant, be without probable cause and malicious).

4. The court notes at the outset that the burden of proving jurisdictional facts under a long-arm statute rests upon the plaintiff. *Haynes v. James H. Carr, Inc.,* 427 F.2d 700, 704 (4th Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970).

*Richmond County Hospital Authority,* 745 F.2d 904, 909 (4th Cir.1984), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *Peanut Corp. of America v. Hollywood Brands, Inc.,* 696 F.2d 311, 313 (4th Cir.1982). The court first determines whether the statutory language contemplates the assertion of personal jurisdiction over a defendant. Second, the court decides whether the exercise of personal jurisdiction comports with federal constitutional standards of due process. *Peanut Corp.,* 696 F.2d at 313.[5]

### A. *Abuse of Process and the Long–Arm Statute*

Under the first step of the analysis, the court recognizes that few cases have decided the issue of whether to subject a party to long-arm jurisdiction for abuse of civil process. In determining whether Virginia's long-arm statute purports to confer jurisdiction, this court must decide two subissues: first, whether the process server acts as the agent of the attorney, thereby coming under the general requirements of the Virginia long-arm statute;[6] and second, whether the tortious "act" occurred in this forum, thereby bringing the facts within the specific requirements of Va.Code 8.01–328.1(A)(3).[7]

### 1. THE PROCESS SERVER AS AGENT

In discussing the principal-agent relationship, the court in *United States v. Rapoca Energy Co.,* 613 F.Supp. 1161 (W.D.Va. 1985), stated that:

Under Virginia law, two factors are necessary in order for an agency relationship to be established. First, "it is necessary that [the agent] be subject to the [principal's] control, with regard to the work to be done and the manner of performing it." ... "Actual control, however, is not the test; it is the right to control which is determinative." ... Second, "the work has to be done on the business of the principal or for his benefit."

*Id.* at 1163 (citations omitted).

Defendants argue that a process server hired by an attorney functions as an independent contractor, and not as an agent.[8] Accordingly, defendants contend that they cannot be held liable for any tortious acts of the process server. In support of this argument, defendants rely on the case of *Bockian v. Esanu Katsky, Korins and Siger,* 124 Misc.2d 607, 476 N.Y.S.2d 1009 (1984).

In *Bockian,* a malicious prosecution action was brought against a process server, his employer, the law firm and the individual lawyer that hired the process server. The plaintiff alleged that the process server harassed and assaulted her while attempting to effect personal service on her employer. *Id.,* 476 N.Y.S.2d at 1011. The law firm and the individual lawyer moved to dismiss the complaint. The court ruled that the firm and the attorney could not be held vicariously liable for the acts of the process server in attempting to effect service of process. The basis for the court's ruling was that "[a]n attorney [or a law firm do] not generally retain a sufficient degree of control over an independent pro-

---

**5.** In proceeding with this two-step analysis, the court is mindful that the Virginia long-arm statute has been construed to extend personal jurisdiction to the limits of due process. *See City of Virginia Beach v. Roanoke River Basin Assoc.,* 776 F.2d 484, 487 (4th Cir.1985); *see also Kolbe, Inc. v. Chromodern Chair Co., Inc.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971).

**6.** The cases relied on by the plaintiff to support his conclusion that jurisdiction under the Virginia long-arm statute is proper do not discuss the issue of agency in any detail. Rather, the courts in those cases assume that a process server is an agent, and instead concentrate on whether service of abusive process constitutes tortious con-

duct within the jurisdiction. *See Vishay Intertechnology, Inc. v. Delta International Corp.,* 696 F.2d 1062, 1067 (4th Cir.1982); *Simon v. United States,* 644 F.2d 490, 497 (5th Cir.1981); *Hamilton, Miller, Hudson & Fayne Travel v. Hori,* 520 F.Supp. 67, 70 (E.D.Mich.1981).

**7.** For a good discussion of the requirements of Va.Code § 8.01–328.1(A)(3), see *Early v. Travel Leisure Concepts, Inc.,* 669 F.Supp. 130, 132 (E.D.Va.1987).

**8.** The court notes, however, that the defendants have failed to file any affidavits disclaiming that the work of the process server was done on their behalf.

cess server's performance of his duties as would be necessary to render the process server an agent or employee of the attorney [or law firm]." *Id.*, 476 N.Y.S.2d at 1013 (citing *Restatement (Second) of Agency* § 2(3)).

The crucial distinction between this case and *Bockian* is the theory of recovery. In *Bockian,* the theory was that the "agent" committed a tort for which the "principal" should be liable. Here, the theory is that the attorneys committed a tort; the plaintiff does not seek to hold the attorneys liable for the acts of the process server, but for their own acts.

More specifically, in the case at bar, no unauthorized physical conduct by the process server occurred; no claim attempting to hold the defendant attorneys liable for the *process server's* torts is alleged. Instead, the plaintiff seeks to hold the defendants liable for their own torts, which were simply *effected* by service of process. The court finds this distinction pivotal to a determination of the agency issue.

Policy considerations also influence the court's decision in the case at bar. In *Bockian,* imposing vicarious liability on the attorneys for the independent bad acts of the process server would have a " 'chilling effect' on attempts by citizens, through their lawyers, to place disputes into the legal process for disposition." *Bockian,* 476 N.Y.S.2d at 1013. In the case before this court, any "chilling effect" would merely be proper deterrence of ungrounded and malicious litigation by parties or their attorneys.[9]

Further, simply labeling a process server an "independent contractor" is not dispositive of the issue of agency, as:

> An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. *He may or may not be an agent.*

*Restatement (Second) of Agency* § 2(3) (emphasis added).

Moreover, "[o]ne who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor." *Restatement (Second) of Agency* § 14 N.

A party may act simultaneously as an agent and independent contractor in the performance of duties for a principal; this seminal proposition underlies the court's conclusion that a process server acts as an agent in the sense that he is authorized to serve process on behalf of the attorney, yet the attorney retains little control over the manner in which process is served.

■ While it is true, as the court observed in *Bockian,* that an attorney cannot be held liable for the unauthorized physical conduct of a process server, it is concomitantly consistent to hold an attorney liable for torts which originate with the attorney and are technically completed by service of process.

■ In short, the requirements of an agency relationship under Virginia law are met. First, the attorneys controlled the process server to the extent that they directed the person to be served, the jurisdiction in which he was served, and, most importantly, *what* he was served. Second, the service of a Complaint is clearly work undertaken for the benefit of an attorney's business, under the allegations of the current Complaint. Accordingly, an attorney may be held liable for torts arising from a process server's acts done within the scope of the agency relationship. To hold otherwise would subvert justice and undermine the jurisdictional powers of the courts of this Commonwealth.

## 2. SERVICE OF ABUSIVE PROCESS AS A "TORTIOUS ACT" IN VIRGINIA

■ Defendants' argument that no tortious act occurred in this Commonwealth is

---

**9.** The court acknowledges that Counts IV and V of the Complaint, involving the filing of false affidavits by the process servers, may implicate the concerns discussed in *Bockian.* However, plaintiff's allegation that the defendants knew plaintiff protested the validity of service of process, yet proceeded to default judgment regardless, provides a basis for Counts IV and V.

premised first on the view that the process server is not their agent. Given the court's conclusion to the contrary, it follows that the defendants were physically present in this jurisdiction, thereby committing the tort of abuse of civil process through their agent process server.

■ However, defendants also advance the theory that the language of Virginia Code § 8.01–328.1(A)(3) is more restrictive than that of the corresponding North Carolina long-arm statute at issue in the *Vishay* case.[10] While the Virginia statute speaks of an "act" causing "tortious injury" in the jurisdiction, the comparable North Carolina provision requires that the defendant commit "tortious conduct" in the state. Defendants assert that no "act" occurred within Virginia, since they were outside the state when employment of the process server occurred, and that the term "conduct" necessarily implies broader jurisdictional powers.[11]

The cases relied on by the defendants in support of this argument are factually distinguishable from the case at bar. Specifically, in *First American First, Inc. v. National Association of Bank Women*, 802 F.2d 1511 (4th Cir.1986), the court dealt with defamatory letters sent into the Commonwealth, and held that jurisdiction existed under Va.Code § 8.01–328.1(A)(4).[12] Further, the *Margoles* and *Murphy* cases also involved telephone calls and letters sent into the applicable jurisdictions, in-

stead of the substantive physical presence in the case at bar.

As stated by Judge Whiting[13] in *North Fork Shenandoah, Inc. v. Bunning*, 7 Va. Cir. 327 (Circuit Court of Warren County 1986):

> The cases are in confusion as to whether the injury [in Virginia] must have resulted from the act of the defendant or his agent while the defendant or his agent was *physically present in the state*. A careful study of the statute suggests that this is necessary, otherwise there would have been no reason to enact the following section, Virginia Code § 8.01–328.1(A)(4), providing for jurisdiction where a defendant has caused "tortious injury in this Commonwealth by an act or omission outside this Commonwealth."

*Id.* at 329. *See also Early,* 669 F.Supp. at 132 (distinguishing technical presence from physical presence).

The *Bunning* case involved telephone calls and letters sent into Virginia from an out-of-state defendant, and the court concluded that jurisdiction would be improper under section (A)(3) of the long-arm statute, since no other contacts were alleged. *Bunning,* 7 Va.Cir. at 331.

Under the facts of the present case, the defendants' agent *was* physically present in the state, consequently nullifying the argument that the "act" requirement of section (A)(3) was not fulfilled. Further support for this view is found in cases cited by the

---

**10.** The plaintiff relies on the court's decision in *Vishay* in arguing that service of abusive process constitutes tortious conduct within this jurisdiction. See n. 6 *supra.*

**11.** Defendants note the *Vishay* court's reliance on *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661 (1st Cir.1972). That case involved a nonresident defendant knowingly sending a false statement into a jurisdiction, intending that it be relied on, and the court held that, for jurisdictional purposes, this was a sufficient "act" within the state. *Id.* at 664. The *Murphy* case was compared with *Margoles v. Johns,* 483 F.2d 1212 (D.C.Cir. 1973), where the court held that defamatory phone calls into the District of Columbia from a Wisconsin defendant were not "acts" within the District of Columbia long arm statute, but were instead acts outside the jurisdiction resulting in

injury within the jurisdiction. The court in *Vishay* chose to follow the reasoning of *Murphy,* based on the broad language of the North Carolina long arm statute. *Vishay,* 696 F.2d at 1066.

**12.** The Fourth Circuit stated:

> Because we uphold the exercise of jurisdiction under § (A)(4), we need not address First American's alternative contention on appeal that the district court erred in finding § (A)(3) not applicable.

*Id.* at 1513. Accordingly, this case does not assist defendants' argument that jurisdiction under section (A)(3) would be improper, since the issue was not reached.

**13.** Judge Whiting is now an Associate Justice on the Virginia Supreme Court.

plaintiff.[14]

The discourse of the *Simon* court is most helpful. The court noted that, while the federal marshals who served subpoenas were innocent of participation in the defendant's knowing misuse of process, this did not serve to insulate the defendant from long-arm jurisdiction. The court relied on the following hypothetical in support of this view:

> If, for instance, a tortfeasor used a commercial messenger (ignorant of the contents of the message delivered) to lure a Louisiana resident into Mississippi for the purpose of committing a tort upon him in Mississippi, the act of the messenger in delivering the message is no less the act of the tortfeasor than if the tortfeasor had himself personally delivered the message.

*Simon,* 644 F.2d at 499.

Accordingly, the court finds, based on a review of the applicable authorities, that Virginia law would allow the exercise of long-arm jurisdiction over the defendant. Therefore, the plaintiff's Complaint has met the first step of the jurisdictional analysis.

### B. *Due Process Considerations*

The second step of the analysis questions whether the exercise of personal jurisdiction in this case would comport with federal constitutional standards of due process. The due process clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any state where the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ The critical due process issue in tort cases is whether it was "foreseeable" that the defendant's out-of-state acts would have an impact within the forum state, "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *See also Gordonsville Industries, Inc. v. American Artos Corp.,* 549 F.Supp. 200 (W.D.Va.1982).

■ Although only a single act of tortious conduct within the Commonwealth is involved in the facts before this court, this contact is sufficient to confer jurisdiction if "by this act defendant has shown a purpose of conducting activities in this State to an extent that it would be fair and just to require him to submit to the jurisdiction of its courts." *Darden v. Heck's, Inc.,* 459 F.Supp. 727, 732 (W.D.Va.1978).

The court finds it reasonable to conclude that a lawyer who knowingly serves abusive process in a jurisdiction may expect to be haled into court where service was effectuated, since by such action he is "purposely avail[ing] himself of the privilege of

---

14. The plaintiff relies on several cases in support of the argument that the Virginia long-arm statute would extend jurisdiction to the facts before the court. In *Hori,* the court held that Illinois defendants were subject to jurisdiction under the Michigan long-arm statute for serving abusive process on the plaintiff in Michigan. The court further held that "[d]efendants, through their agent (a Michigan County Sheriff), were physically present in Michigan." 520 F.Supp. at 70.

In *Simon,* the court, in construing the Louisiana long-arm statute, held that a Georgia defendant who wrongfully induced the issuance of a bench warrant for a Louisiana plaintiff was subject to jurisdiction under the "tortious conduct" provision of the Louisiana statute. The court found "that the acts of the Louisiana federal marshals in serving or attempting to serve subpoena(s) in Louisiana are attributable to [the defendant], who procured [their] issuance." 644 F.2d at 497. It is worth noting that the Louisiana statute extended personal jurisdiction to "'a cause of action arising from the nonresident's ... causing injury or damage by an offense or quasi offense *committed through an act or omission in this state.'* " *Id.* Obviously, the language of the statute is similar to that of Virginia.

Finally, the court notes that the Fourth Circuit has addressed the issue, albeit in the context of North Carolina law. In *Vishay,* the Fourth Circuit, in construing the North Carolina long-arm statute, stated that an out-of-state defendant, who causes abusive process to be served upon an in-state plaintiff, would subject the non-resident to personal jurisdiction in North Carolina. 696 F.2d at 1067 (citing the *Simon* and *Hori* decisions with approval).

conducting activities within the forum State." *Luke v. Dalow Industries, Inc.,* 566 F.Supp. 1470, 1472 (E.D.Va.1983).[15] Accordingly, the court finds the exercise of personal jurisdiction in this case meets due process requirements, and the Motion to Dismiss will be denied.

### III

### *Forum Non Conveniens*

■ Defendants argue, alternatively, that Virginia is an inconvenient forum and that the case should be transferred to Florida. 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

A party moving under § 1404(a) "bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought." *Medicenters of America, Inc. v. T & V Realty & Equipment Corp.,* 371 F.Supp. 1180, 1184 (E.D. Va.1974). Further, "[t]his burden is a heavy one, for unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809, 817 (E.D.Va.1981), *aff'd* 715 F.2d 142 (4th Cir.1983).[16]

A consideration of the interests of justice and convenience in the case at bar indicates the following: The defendants argue that records in the underlying libel action are in Florida, that the plaintiff in the libel action resides in Florida, and that Schleit's book was sold in Florida. Defendants concede, however, that there may be witnesses and records in Washington, D.C.

Plaintiff has countered by naming witnesses located within a two to forty-five mile radius of this court. Further, these witnesses would not be within the 100–mile subpoena range of the Florida court. In addition, plaintiff has identified records located within six miles of this court. Finally, Virginia law would apply to this action, since the wrong occurred in this forum.

The court feels that the defendants have failed to carry the heavy burden of showing that the interests of justice and convenience should tip the scale in favor of a transfer to Florida. Accordingly, the Motion to Transfer is denied.

An appropriate Order shall issue.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is ORDERED:

(1) that Defendants' Motion to Dismiss is DENIED.

(2) that Defendants' Motion to Transfer on the Basis of Forum *Non Conveniens* is DENIED.

(3) that Plaintiff's Motion to File an Amended Complaint is GRANTED.

---

**15.** Indeed, defendants admit that their "conduct was purposeful in that they intended that process be served on the plaintiff in Virginia when they requested that the Arlington County Sheriff's Department to [sic] serve it." Defendants' Supplemental Memorandum in Support of Their Motion to Dismiss at p. 9.

**16.** The court in *Hodson* considered the following factors:

1. Availability of an alternative forum: the defendant must show such a forum is available to the plaintiff.

2. Private interest factors: The court listed as important considerations relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; ... and all other practical problems that make the trial of a case easy, expeditious, and inexpensive.

3. Public interest factors: local interest in the matter and applicable law are the relevant concerns in this area.

*Hodson,* 528 F.Supp. at 817–823.