0196

Muriel C. HUME, Administratrix of the Estate of Donald E. Hume, Respondent, v. DURWOOD MEDICAL CLINIC, INCORPORATED; James H. Black, M.D; Charles Harris, M.D; and Harold P. Hope, M.D, of which Durwood Medical Clinic, Incorporated; James H. Black, M.D.; and Charles Harris, M.D., are Appellants. Appeal of DURWOOD MEDICAL CLINIC, INCORPORATED; James H. Black, M.D.; and Charles Harris, M.D.

(318 S. E. (2d) 119)

Court of Appeals

*Robert R. Carpenter* and *Benjamin A. Johnson,* of *Roddey, Carpenter & White,* Rock Hill, *for appellants.*

*O. Fayrell Furr, Jr.* and *Charles L. Henshaw, Jr.,* Columbia, and *J. Alan Bass,* Myrtle Beach, *for respondent.*

Heard April 17, 1984.

Decided June 11, 1984.

CURETON, Judge:

This is a medical malpractice action brought by the administratrix of a Union County South Carolina decedent against a South Carolina physician, a North Carolina corporation doing business as a medical clinic and two of its staff physicians. The North Carolina defendants filed a demurrer and a motion to dismiss the administratrix's complaint for lack of personal jurisdiction over them. They also appeared specially to contest jurisdiction. The trial judge overruled the demurrer and denied the motion to dismiss. This appeal followed. We reverse.

Respondent's decedent, Donald Hume, was treated by Harold Hope, a Union County physician. Hope, who does not contest jurisdiction, referred Hume to the Durwood Clinic located in Charlotte, North Carolina. There Hume was treated by appellants Black (a nephrologist) and Harris (a cardiologist) over a period of years. On February 22, 1978, Harris saw Hume in his Charlotte office. On February 25, 1978, Hume died of a heart attack at his Union County home. Hume's administratrix brought this action in Union County, alleging that the doctors and clinic were negligent in rendering medical care to her decedent.

Depositions relating solely to jurisdiction were taken of Doctors Black and Harris and the clinic's business manager, Davis. The administratrix relied exclusively upon the depositions to demonstrate to the trial court sufficient facts to support its jurisdiction. The depositions revealed that the appellant physicians had few general contacts with South Carolina. The appellant physicians were not licensed to practice in South Carolina, none has owned property in South Carolina, and none has maintained bank accounts in South Carolina. The appellant physicians have not hospitalized patients in South Carolina, nor have they had hospital privileges in South Carolina. They have not paid taxes in South Carolina, they have not solicited patients from South Carolina, and they have not written prescriptions to be filled by South Carolina pharmacists.

The depositions reflect, however, that the appellant physicians knew that Hume was from South Carolina; that they collaborated with Dr. Hope relative to Hume's treatment by advising Hope and furnishing him with medical records; that appellant Harris wrote a letter to Hume in South Carolina furnishing medical advice; that they practice medicine in close proximity to South Carolina; that they have treated a number of South Carolina residents, but these residents probably account for less than one (1%) percent of their patient load; that they have carried out billing by mail in South Carolina; and that they knew their advice would be carried out in South Carolina.

As to the appellant Clinic, its manager testified that he did not know how many of the Clinic's patients were from South Carolina, but the Clinic does have a number of patients from South Carolina. However, the Clinic does not solicit business in South Carolina and none of its staff physicians is licensed to practice medicine in South Carolina. The Clinic bills South Carolina patients by mail. Finally, the Clinic owns no property in South Carolina.

The trial judge found that the administratrix's pleadings and proof brought the conduct of the North Carolina doctors and clinic within the scope of Section 36-2-803(1)(c) which provides:

(1) A court may exercise personal jurisdiction over a per-

son who acts directly or by an agent as to a cause of action arising from the person's

. . .

(c) commission of a tortious act in whole or in part in this State.

The trial court also found that the activities of the appellants constituted sufficient minimal contacts with South Carolina so that the exercise of personal jurisdiction over them would not offend due process and would conform to traditional notions of fair play and substantial justice.

Appellants first argue that the trial court committed reversible error in overruling their demurrer because the complaint fails to allege conduct sufficient to invoke personal jurisdiction under Code Section 36-2-803. We disagree. The generally recognized rule is that in a court of general jurisdiction, it is ordinarily unnecessary for the plaintiff to allege affirmatively the jurisdiction of the court. 61A Am. Jur. (2d) *Pleading* Section 70 (1981). To sustain a demurrer for lack of jurisdiction, the proof of want of jurisdiction must appear on the face of the complaint. *Pollock v. Carolina Interstate Building & Loan Association,* 48 S. C. 65, 25 S. E. 977 (1896).

Appellants cite the case of *Jurko v. Jobs Europe Agency,* 43 Ohio App. (2d) 79, 334 N. E. (2d) 478 (1975) and 61A Am. Jur. (2d) *Pleading* Section 70 (1981) for the proposition that one seeking to invoke jurisdiction under the long-arm statute must recite facts in his complaint which support jurisdiction under the statute. We do not read these authorities to so hold. *Jurko* deals with a motion to dismiss for lack of personal jurisdiction over a nonresident. The court opined that since the complaint did not allege the requisite jurisdictional facts, the plaintiff's neglect in electing to stand on the complaint without supporting it permitted the trial court to dismiss the action. Likewise, 61A Am. Jur. (2d) *Pleading* Section 70 is equally inapposite. The section states, *inter alia:*

Where an issue of long-arm jurisdiction may be anticipated, *good pleading* dictates that the Plaintiff recognize that fact at the outset and deal with that issue in his complaint. [emphasis added].

Neither *Jurko* nor the American Jurisprudence section ■ stands for the proposition that jurisdictional facts *must be pleaded* in a court of unlimited jurisdiction to invoke jurisdiction under the long-arm statute. Even if we were to assume that the administratrix was required to allege jurisdictional facts in this case, we would nonetheless hold that the complaint is sufficient to withstand a demurrer.

The appellants next argue that the trial judge committed error in finding as a fact that their conduct constituted the commission of a "tortious act in whole or in part in this State." They further argue that even if their conduct falls within the long-arm statute, they have not had the requisite minimal contacts with South Carolina to subject them to the jurisdiction of a South Carolina court.

The determination of whether the trial court had personal jurisdiction over the nonresident physicians and clinic depends on two factors: whether the nonresidents' conduct amounted to the commission of a tortious act within this State as contemplated by the long-arm statute, and whether the trial court's exercise of personal jurisdiction in these particular circumstances comports with the constitutional requirements of due process of law. *Cozi Investment v. Schneider*, 272 S. C. 354, 252 S. E. (2d) 116 (1979).

In *Parker v. Williams & Madjanik, Inc.*, 270 S. C. 570, 243 S. E. (2d) 451, 454 (1978), our Supreme Court, in analyzing Code Section 36-2-803(1)(c) stated that

It is generally held that a provision such as 36-2-803(1)(c), predicating jurisdiction on the commission of a tort "in whole or in part" in this State, is applicable where in-state injurious consequences resulted from out-of-state wrongful acts or omissions. [citation omitted].

As pointed out by the trial judge: "Generally, the place of the wrong is determined where the last event necessary to make an actor liable for an alleged tort takes place, or as otherwise stated, the place where the injury is suffered rather than the place where the act which caused the injury was committed." 86 C.J.S. *Torts* Section 25.

In *Parker*, a nonresident architect designed a building which he knew was to be constructed on Hilton Head Island,

South Carolina. The building allegedly collapsed from negligent design, causing the intestate's death. The court held that the tortious act occurred in South Carolina where the injury was suffered.

We recognize, however, that there is a very substantial line of cases from other jurisdictions that have rejected the view that the tortious rendition of medical services out of the forum state is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt. *Wright v. Yackley,* 459 F. (2d) 287 (9th Cir. 1972); *Chancellor v. Lawrence,* 501 F. Supp. 997 (N. D. Ill. 1980); *Glover v. Wagner,* 462 F. Supp. 308 (D. Neb. 1978); *Kurtz v. Draur,* 434 F. Supp. 958 (E. D. Pa. 1977); *Soares v. Roberts,* 417 F. Supp. 304 (D. R. I. 1976); *Markham v. Gray,* 393 F. Supp. 163 (W. D. N. Y. 1975); *Gelineau v. New York University Hospital,* 375 F. Supp. 661 (D. N. J. 1974); *McAndrew v. Burnett,* 374 F. Supp. 460 (M. D. Pa. 1974); *Kailieha v. Hayes,* 56 Hawaii 306, 536 P. (2d) 568 (1975); *Woodward v. Keenan,* 88 Mich. App. 791, 279 N. W. (2d) 317 (1979).

The bellwether case of *Wright v. Yackley, supra,* established a distinction between a situation where one ventures into a foreign state, receives medical treatment, returns to his home state and suffers injurious consequences, and a case where the nonresident physician diagnoses and treats a patient by mail. Another case, *S. R. v. City of Fairmont,* 280 S. E. (2d) 712 (W. Va. 1981) draws a distinction between those cases where nothing is done in the forum state and those involving the breach of the continuing duty of a physician to "provide follow-up treatment for his patient in the forum state." The latter cases would permit the invoking of jurisdiction over the nonresident physician if he engaged in a course of treatment by mail or his conduct involved a breach of a duty to provide follow-up care in the forum state.

Here there were allegations in the complaint and some evidence to support those allegations that the North Carolina doctors and clinic engaged in a course of treatment of Mr. Hume in their offices in North Carolina, and to satisfy their obligation to provide follow-up care to Hume, attempted by mail and telephone to provide *some* treatment to him in South Carolina. We therefore hold that the administratrix has shown by the barest of facts that appellants' conduct falls within the requirements of our long-arm statute.

We do not agree, however, that the trial court's exercise of jurisdiction under the facts of this case is consonant with due process. The test of "minimal contacts" announced in *International Shoe Co. v. State of Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), requires that this State's exercise of jurisdiction not offend traditional notions of fair play and substantial justice.

In determining what is meant by "traditional notions of fair play and substantial justice," our courts have established three considerations: (1) the duration of the activity of the nonresident in this State; (2) the character and circumstances of the commission of the nonresident's acts; and (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident. *Boney v. Trans-State Dredging Co.*, 237 S. C. 54, 115 S. E. (2d) 508 (1960). In addition, the courts often look to the interests of the State in exercising its jurisdiction over nonresidents. *Parker v. Williams & Madjanik, Inc., supra.*

Cases involving medical services are quite different from those involving other commercial activity. This view is accurately reflected in *Gelineau, supra:*

> Unlike a case involving voluntary interstate or international economic activity . . . the residence of a recipient of *personal* services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a patient travels to receive professional services without having been solicited . . . then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were there rendered improperly. [emphasis added].

*Accord, Soares v. Roberts, supra; Woodward v. Keenan, supra; Lemke v. St. Margaret Hospital*, 552 F. Supp. 833 (N. D. Ill. 1982).

South Carolina's interest in providing her citizens with a convenient forum for the vindication of torts imposed at the hands of nonresidents must be balanced by its countervailing interest of insuring that its residents receive adequate medi-

cal services to meet their needs wherever they may be required to go to receive it. *Wright v. Yackley, supra.*

We do not glean from the conduct of the appellants an intent on their part to purposefully avail themselves of the privilege of providing medical services to South Carolina residents on a systematic basis. *Wright v. Yackley, supra; Soares v. Roberts, supra; Woodward v. Keenan, supra.* By providing services to Hume, the appellants were merely fulfilling their professional responsibilities to provide medical services to a patient in need, and should not by so doing automatically subject themselves to the jurisdiction of the courts of this State.

Considering the tenuous character of the relationship between the appellants and South Carolina, in light of this State's interest in providing service of process over nonresidents to its injured citizens, in tandem with the chilling effect that the exercise of jurisdiction over the appellants could have on the availability of medical services in South Carolina, we conclude that the assertion of personal jurisdiction over the appellants would be unreasonable under the circumstances of this case.

Finally we have not been made aware of any burden that would be imposed upon the administratrix by requiring her to prosecute her action in North Carolina.

Accordingly, the order of the trial court is

Reversed.

SHAW and BELL, JJ., concur.