**Alan W. WOLF and Gail S. Wolf, Appellees,**

v.

**RICHMOND COUNTY HOSPITAL AUTHORITY, Appellant.**

No. 84–1024.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 9, 1984.

Decided Oct. 4, 1984.

---

Wyck A. Knox, Jr., Augusta, Ga. (Ted H. Clarkson, Knox & Zacks, P.C.; Augusta, Ga., David A. Brown, Henderson, Salley, Lynn, Farmer, Brown & Tucker, Aiken, S.C., on brief), for appellant.

Daryl G. Hawkins, Columbia, S.C. (A. Camden Lewis, Austin & Lewis, Columbia, S.C., on brief), for appellees.

Before RUSSELL, HALL and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

The issue in this appeal is whether a Georgia hospital's contacts with the State of South Carolina are sufficient to constitute "doing business" for purposes of obtaining personal jurisdiction under the South Carolina long-arm statute. We find that the hospital's contacts are not purposeful, systematic or significant enough to warrant the exercise of jurisdiction in light of due process guarantees and this court's standard that the contacts with the forum state be "fairly extensive" when the cause of action arises outside that state. We, therefore, reverse the decision of the district court and grant defendant's motion to dismiss.

## I

This is a diversity jurisdiction case in which Alan and Gail Wolf allege that their infant son was injured as a result of actions taken by agents of University Hospital, a public hospital located in the City of Augusta and in Richmond County, Georgia. The hospital is owned and operated by the defendant, Richmond County Hospital Authority (Hospital Authority), a public authority created under the Georgia Hospital Authorities Law. The Hospital Authority originally instituted suit in the Civil Court of Richmond County against the Wolfs for nonpayment of a bill incurred at University Hospital. The Wolfs answered and counterclaimed with allegations of medical malpractice. Georgia residents at the time of the alleged malpractice and at the time of the commencement and answer to the suit in the county civil court, the Wolfs moved to Aiken County, South Carolina before filing the present action. Aiken County and Richmond County are separated by the Savannah River, the boundary between South Carolina and Georgia. The defendant moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Three affidavits were submitted to the district court, two from officials of the South Carolina Department of Health and Environmental Control (DHEC) and one from the Executive Director of the Richmond County Hospital Authority. Based on these affidavits and on facts stated at a hearing, the district court denied the motion to dismiss. The court made the following seven findings of fact:

1. The South Carolina Department of Health and Environmental Control (DHEC) has authorized Augusta Hospital to receive payment from the State of South Carolina for residents of Aiken County, South Carolina, seeking certain maternity and neonatal services at University Hospital.

2. University Hospital received payments from Aiken County Council as reimbursement for treatment of residents of Aiken County who are indigent.

3. Although Richmond County Hospital Authority has no hospital or medical facility located in South Carolina, the University Hospital does receive medicaid/medicare reimbursements for qualified South Carolina residents treated at University Hospital.

4. University Hospital is listed in the yellow pages of the telephone directory for North Augusta, South Carolina, a city located in Aiken County, South Carolina.

5. University Hospital is under contract to provide laundry services to the Edgefield County Hospital in South Carolina.

6. University Hospital derives a substantial amount of revenue from treatment of South Carolina residents; defendant admitted in oral argument that approximately one-fifth ($\frac{1}{5}$) of University Hospital's income is obtained from South Carolina residents.

7. University Hospital is a member of the East Central Georgia Health Services Agency, Inc. This agency was created to coordinate health care needs in its district, which district includes Aiken County, South Carolina. This is the only such district in South Carolina that crosses state lines. While this agency does not directly have jurisdiction over patient admission, the effect of University Hospital's membership in the agency is to require South Carolina residents in Aiken County as a practical matter to receive secondary and tertiary [1] level care from University Hospital. This is because the agency has jurisdiction over capital expenditures and construction, as well as issuing certificates of need. The purpose of the agency is to avoid duplication of expensive facilities. Since University Hospital is well equipped with such advanced medical facilities and Aiken County Hospital is also within the Agency's

---

1. At oral argument the court was informed that tertiary care is the highest level of care available at a hospital.

district, Aiken Community Hospital does not receive the advanced equipment. The Agency's efforts to avoid duplication therefore require Aiken County residents to seek secondary and tertiary level care from the University Hospital in Augusta, Georgia, since it is the closest and most convenient facility of its kind.

## II

The Hospital Authority makes two arguments. First, it contends that the district court's finding of fact that South Carolina residents in Aiken County are "required" to seek health care from University Hospital is clearly erroneous. Second, defendant argues that, on the basis of the district court's first six findings of fact and other facts in the record, plaintiffs have not established "fairly extensive" contacts of University Hospital with the State of South Carolina required for the exercise of personal jurisdiction.

The Hospital Authority contends that there is no evidence in the record to support the district court's finding of fact number seven. In this finding the court considered the relationship of the East Central Georgia Health Services Agency, Inc. to the provision of health care in the Richmond County, Georgia and Aiken County, South Carolina area and concluded that "the effect of University Hospital's membership in the [health services] agency is to require South Carolina residents in Aiken County as a practical matter to receive secondary and tertiary level care from University Hospital." In its final finding of fact the court also stated that "[t]he Agency's efforts to avoid duplication therefore require Aiken County residents to seek secondary and tertiary level care from the University Hospital in Augusta, Georgia, since it is the closest and most convenient facility of its kind." Plaintiffs argue that this finding is supported by one of the

affidavits and by a factual allegation in their complaint which, they contend, must be accepted as true for purposes of a motion to dismiss.

Examining first the affidavits presented to the district court, we find that defendant submitted an affidavit in which the affiant specifically stated that "South Carolina residents are under no compulsion or requirement to seek secondary and tertiary level care from University Hospital." [2] This affidavit also provided that "University Hospital has no obligation to admit a patient who is a resident of South Carolina."

While conceding that Aiken County residents are under no "compulsion" to seek health care from University Hospital, plaintiff argues that finding of fact number seven is supported by paragraph four of an affidavit prepared by the director of DHEC's Division of Certification of Need of the Bureau of Health Facilities and Services Development. This paragraph provides:

Aiken County is included within the East Central Georgia Health Service Area which is the only HSA that crosses state lines in South Carolina. Under the Certificate of Need program, the review and approval of capital expenditures and expansion of hospital services for the sole hospital located in Aiken County, the Aiken Community Hospital, would take into consideration facilities and services available at Augusta hospitals, including University Hospital, and the utilization of such services by Aiken County residents. Any unnecessary duplications would be avoided. Likewise, approval for the development and expansion of services in Augusta hospitals would be based in part upon the utilization of those hospitals by Aiken County residents.

In analyzing the affidavits, we do not find that Aiken County residents are "re-

---

**2.** In his affidavit, the Executive Director of the Hospital Authority stated:

South Carolina residents are under no compulsion or requirement to seek secondary and tertiary level care from University Hospital and the existence of the East Central Georgia

Health Systems Agency, Inc., and membership therein has no effect on where patients are required to seek treatment. The health system agencies only have jurisdiction over capital spending and construction, not over patient admissions.

**908**

quired" to seek care in Georgia. The affidavits suggest that certain medical facilities are available at University Hospital that are not available at the hospital located in Aiken County and that the purpose of the health systems agency is to avoid duplication of facilities and services in an area. This planning function, however, does not extend to controlling patient admissions or assigning a certain person to a certain hospital. Plaintiff seeks to support the district court's conclusion that "as a practical matter" Aiken County residents are "required" to seek care at University Hospital by pointing out that the hospital is a thirty-minute drive from Aiken whereas the other two cities in South Carolina with equivalent facilities are over an hour or two and one-half hours away from Aiken. This fact, however, does not establish that Aiken residents are "required" to seek care at the hospital. People and their physicians choose hospitals for a variety of reasons. Proximity is merely one of those reasons. We find that use of the term "require," which has the connotation of certain persons being compelled to go to certain hospitals, is not supported by the affidavits.

Plaintiffs also argue that the finding is supported by their complaint in which they allege that the citizens of North Augusta and Aiken, South Carolina are "forced to rely upon the University Hospital to provide them secondary and tertiary level care" by the operation of the East Central Georgia Health Planning Agency District. Plaintiffs' argument with respect to the complaint is that, on a motion to dismiss, the plaintiffs' factual allegations must be accepted as true.

■ This argument, however, overlooks the fact that the allegation in the complaint was controverted by defendants' affidavit (compare footnotes two and three, *supra*). "In ruling on a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except insofar as controverted by the defendant's affidavit, must be taken as true." *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683, n. 3 (5th Cir.1977). The statement in defendant's affidavit that "South Carolina residents are under no compulsion or requirement to seek ... care from University Hospital" was not in turn controverted by statements in plaintiffs' affidavits. *See O'Hare International Bank v. Hampton*, 437 F.2d 1173 (7th Cir. 1971) (because affidavits filed pursuant to Fed.R.Civ.P. 12(d) contained contradictory factual allegations with respect to personal jurisdiction, court accepted as true for purposes of appeal, facts related in plaintiff's affidavits and complaint) Nor are the facts upon which the jurisdictional issue is based so closely intertwined with the facts involving the merits of the case that a decision on personal jurisdiction should have been postponed until trial. *See 2A Moore's Federal Practice* ¶ 12.16 (1984); *Hare v. Family Publications Service, Inc.*, 334 F.Supp. 953, 956 (D.Md.1971). Further, in its order deciding the motion to dismiss the district court made no mention of assuming the truth of the allegation in plaintiff's complaint.

■ When a presumption of validity is not applied to the factual allegation in paragraph IV[3] of plaintiff's complaint, we are left with the definite and firm convic-

---

**3.** Paragraph IV of the complaint provides:

In operating the said University Hospital the defendant, Richmond County Hospital Authority, has significant contacts with the State of South Carolina, as University Hospital is a regional referral medical center servicing North Augusta and Aiken, South Carolina and environs. It lists University Hospital in the telephone directories for North Augusta and Aiken, South Carolina, and otherwise promotes and markets its services to citizens of South Carolina. It regularly receives, admits and treats patients who are residents of the Aiken, South Carolina area, and both Aiken,

South Carolina and Augusta, Georgia are included in the *East Central Georgia Health Planning Agency District by operation of which the citizens of North Augusta and Aiken, South Carolina are forced to rely upon the University Hospital to provide them secondary and tertiary level care*, and the University Hospital provides primary, secondary and tertiary medical care to a significant number of citizens of the Aiken, South Carolina area on a regular basis, for which it receives substantial federal funding, which would not be available to it. (Emphasis added)

tion that a mistake has been committed by the district court in the conclusion that South Carolina residents are "required" to seek care at University Hospital. *United States of America v. United States Gypsum Company*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). This finding of fact is, therefore, clearly erroneous.

### III

■ The question is whether, based on the first six findings of facts which defendant does not contest, the hospital has sufficient contacts with South Carolina to subject the Hospital Authority to personal jurisdiction. Where federal jurisdiction is based on diversity of citizenship a two-part test is to be applied to determine questions of personal jurisdiction. *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976). First, whether there is statutory authority for the exercise of jurisdiction under the laws of South Carolina and second, whether the exercise of jurisdiction complies with federal constitutional standards of due process. *Id.* The statutory authority is clear. The Wolfs assert personal jurisdiction on the basis of S.C.Code Ann. § 36–2–802 which provides:

> A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action.

The long-arm statutes of South Carolina have consistently been interpreted to provide for jurisdiction to the full extent permissible under the due process clause of the fourteenth amendment. *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 747 (4th Cir.1971)

■ The legal standard to be applied in the due process analysis is well established. Where the defendant is not present in the forum, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Within the broad principle of *International Shoe*, different statutory provisions and different standards apply in cases where the contact with the state gives rise to the putative cause of action (S.C.Code Ann. § 36–2–803) and where, as in the instant case, plaintiff's claims arise totally outside of the state. (S.C.Code Ann. § 36–3–802). A more stringent standard is applied when, as in the case at bar, Section 36–2–802 is relied upon. *Long v. Baldt*, 464 F.Supp. 269, 275, fn. 7 (D.S.C.1979). To establish personal jurisdiction over an out-of-state defendant under the "doing business" provision, the "contacts between [the defendant] and the State must be fairly extensive before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.'" (citations omitted) *Ratliff, supra.* at 748. *See also O'Neal v. Hicks Brokerage Co.*, 537 F.2d 1266, 1268 (4th Cir.1976) ("[T]he sufficiency of contacts threshold is elevated when the cause does not arise in the forum state or derive from the foreign corporation's transactions in the state,") citing *Lee v. Walworth Valve Co.*, 482 F.2d 297 (4th Cir.1973) and *Ratliff, supra.* The Supreme Court has characterized the test to be applied when a plaintiff's claim does not arise out of a defendant's activities in the forum state as whether the contacts are of a "continuous and systematic" nature. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

The three cases in which the court has reviewed the questions of the sufficiency of contacts necessary for personal jurisdiction and the fairness of requiring a foreign defendant to litigate in the courts of South Carolina, when the cause of action arises in another state, *O'Neal, supra; Lee, supra;* and *Ratliff, supra;* provide the standard against which the instant case should be examined. The facts of the three cases were summarized in *O'Neal:*

> In *Ratliff*, the Court was presented with non-South Carolina citizens seeking to maintain an action in South Carolina

District Court against two pharmaceutical companies for injuries occurring in other states. Although cognizant of the companies' minimum contacts in the state, we concluded that the suit could not be maintained in South Carolina because the injury did not arise out of activity in the forum state. This decision was dictated by the fact that South Carolina had no nexus and plaintiffs were attempting to avail themselves of South Carolina's lengthy statute of limitations.

In *Lee*, in contrast to *Ratliff*, we held that suit could be maintained in South Carolina by the executrix of an estate whose decedent was killed on the high seas. The executrix was a citizen and resident of South Carolina as was the decedent. Although recognizing that the cause of action did not occur in the forum state, we nevertheless concluded that South Carolina had a paternal interest in the recovery by one of its citizens of appropriate compensation. *Lee, supra.* at 299. Walworth Company did not maintain an office in South Carolina, owned no property in the state, and had no resident sales personnel. Walworth, however, sent sales personnel to South Carolina soliciting business for approximately eighty (80) days annually. This factor coupled with sales exceeding one hundred thousand dollars annually led us to conclude that Walworth's contacts were sufficient to fall within the ambit of *in personam* jurisdiction of South Carolina.

Applying these standards to this appeal, we hold that Hicks' contacts with South Carolina are *de minimis*. The sole thread linking Hicks to South Carolina is arranging for the transportation of cotton to South Carolina. These transactions were conducted in Mississippi with the Mississippi agent of a South Carolina entity. Over a three-year period, these transactions occurred intermittently resulting in meager remuneration. Hicks has never operated or established its "presence" in South Carolina.

*O'Neal*, 537 F.2d at 1268.

■ The Wolfs' attempt to place themselves within the factual situation found in *Lee*; however, the facts do not fit. In *Lee* we emphasized the State's paternal interest in protecting its residents and that such interest can be considered in determining whether South Carolina courts may exercise jurisdiction over a nonresident corporation. In *Lee*, however, there were other facts that warranted the exercise of jurisdiction over the nonresident corporation. For three years salesmen with the corporation had spent approximately eighty days each year soliciting business in the state and the corporation had made sales amounting to $100,000 to South Carolina customers. In *Lee*, the defendant contesting jurisdiction had actively engaged in substantial commerce within the borders of South Carolina. In the case at bar there has been no finding that University Hospital ever "solicited" business in South Carolina. The affidavit submitted by defendant affirmed that "University Hospital does not advertise or otherwise solicit or encourage South Carolina residents to seek treatment at University Hospital."

The contacts cited in the first, second, third and sixth findings of fact establish that University Hospital treats South Carolina residents and receives payments (either from state or local governmental bodies or from the residents themselves) for services rendered. The fourth contact cited the listing of University Hospital in the North Augusta, South Carolina telephone directory does not indicate a purposeful contact in order to generate revenue but instead illustrates the proximity of and the close ties existing between Augusta, Georgia and North Augusta, South Carolina. The court did not find that University Hospital had obtained paid advertisements in the North Augusta telephone directory. *See also Kennedy v. Ziesmann*, 526 F.Supp. 1328 (E.D.Ky.1981) (court found that a telephone listing alone, without additional advertising or other solicitation did not amount "in and of itself to regular solicitation of business" such that a physician in a neighboring state would be subject to jurisdiction in the state where the directory was distributed).

The only purposeful contact shown by plaintiffs is the provision of laundry services to the county hospital in Edgefield, South Carolina. This contact is, however, *de minimis* and the cause of action did not arise from this contact. The seventh finding of fact, excepting the portion that this court finds clearly erroneous, describes the activities of the East Central Georgia Health Services Agency and not activities initiated by University Hospital. This finding shows that the Hospital Authority is subject to regulations imposed by the Congress of the United States in regard to the development and distribution of health care facilities. *See*, 42 U.S.C. §§ 300(1)–§ 300(1)(4) (governing the establishment and duties of health system agencies). The fact that the Hospital Authority complies with the requirements of federal law and that this law establishes an agency affecting both Georgia and South Carolina does not indicate purposeful, voluntary activity in South Carolina on the part of the defendant.

Plaintiff also argues that the hospital's contacts with South Carolina are more extensive than those of the defendant in *O'Neal* because University Hospital receives one-fifth of its income from South Carolina patients, as opposed to the "meager remuneration" received by the *O'Neal* defendant from dealings in South Carolina. In making such a comparison, however, the fundamental nature of the defendant must be recognized. "Cases involving medical services are quite different from those involving other commercial activity." *Hume v. Durwood Medical Clinic, Inc.*, 318 S.E.2d 119 at 122 (S.C.App.1984). The cases from other jurisdictions involving hospitals and physicians are instructive. And, although federal law is controlling on the issue of due process, *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 789 (9th Cir.1977), a recent decision of the South Carolina Court of Appeals, *Hume v. Durwood, supra,* is persuasive. *Hume* involved a medical malpractice action brought by the administratrix of a South Carolina decedent against, among others, a North Carolina corporation doing business as a medical clinic and certain North Carolina physicians. Deposition testimony revealed the degree and nature of the contacts between the defendants, the decedent and the State of South Carolina. The depositions reflected that, although they had a number of patients from South Carolina, the clinic and physicians did not solicit business in South Carolina. None of the clinic's staff physicians were licensed to practice medicine in South Carolina. The clinic and physicians billed South Carolina patients by mail and one of the physicians had written a letter to the decedent in South Carolina furnishing medical advice. Finding that the exercise of jurisdiction in South Carolina would not be consonant with due process, the court quoted from *Gelineau v. New York University Hospital*, 375 F.Supp. 661, 667 (D.N.J.1974):

Unlike a case involving involuntary interstate or international economic activity ... the residence of a recipient of *personal* services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a patient travels to receive professional services without having been solicited ... then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were there rendered improperly.

*Hume*, at 122.

The court also approved the reasoning of *Gelineau* that the state's interest in insuring that its citizens do not have to leave the state to file suit must be balanced against the burden to those providing the medical services of having to defend themselves in a foreign forum. Such a burden might ultimately have the counter productive result of reducing the availability of medical services to residents of the forum state. *See also Wright v. Yackley*, 459 F.2d 287 (9th Cir.1972); *But see Cubbage v. Merchant*, 732 F.2d 1476 (9th Cir.1984) (Hug.,

J., dissenting). (majority found "no evidence in the record" to indicate that subjecting foreign defendants to jurisdiction would have a " 'chilling effect' " on defendants' treatment of other residents of forum state).

The *Hume* court concluded that the conduct of the physicians and the clinic did not show "an intent on their part to purposefully avail themselves of the privilege of providing medical services to South Carolina residents on a systematic basis." *Id.*

The cases relied on by the Wolfs in which doctors or medical facilities were found to be subject to the jurisdiction of a foreign court are distinguishable because, in these cases, the defendant either actively solicited or encouraged the nonresident to travel to their facility for treatment or had patient referral or transfer contacts. *Cubbage v. Merchent, supra* (defendant physicians applied for and received Medi-Cal numbers in order to receive reimbursement from forum state for services rendered to eligible residents of forum state; defendant hospital took out a paid advertisement in yellow pages of telephone directory distributed in forum state); *Lemke v. St. Margaret's Hospital,* 552 F.Supp. 833 (N.D.Ill. 1982) (finding of solicitation made by district court—defendant advertised in forum state yellow pages); *Braman v. Mary Hitchcock Memorial Hospital,* 631 F.2d 6 (2d Cir.1980) (defendants, pursuant to agreements with forum state hospitals, served as consultants and supplied back-up services to hospitals in forum state—on remand district court instructed to determine whether those and other contacts distinguish the case from another case where personal jurisdiction was not found because the defendant Hospital did not have "any agents in the forum state channeling patients" to it); *Soares v. Roberts,* 417 F.Supp. 304 (D.R.I.1976) (finding by district court that nonresident Hospital "knowingly solicited and facilitated referrals of [forum state] residents on a continuing basis" and placed advertisements in its home-state newspaper and on television which were widely received in the forum state); *S.R. v. City of Fairmont,* 280 S.E.2d 712 (W.Va.

1981) (defendant medical corporation found to derive a direct economic benefit from solicitation made by an abortion clinic in defendant's home state for abortion business from forum state).

## IV

In conducting the due process analysis and balancing issues of fairness and convenience to the parties, questions also arise of whether the plaintiff would suffer hardship in the event of dismissal and whether there is "any other state whose courts might provide a more likely forum," *Lee v. Walworth Valve, supra,* 482 F.2d at 299. In the instant case the alleged cause of action arose in Georgia at a time when plaintiffs were Georgia residents, thus involving only Georgia residents. An action, which is still pending, was originally brought by the *defendant* in a Georgia court of limited jurisdiction ($25,000). At oral argument this court was informed that, in order to prevent the statute of limitations from running, plaintiff has filed an action in Richmond County Superior Court, a court of unlimited jurisdiction. It appears, therefore, that dismissal of the case brought in South Carolina will not prejudice the plaintiff and that Georgia is the logical forum.

We conclude, therefore, Hospital Authority lacks sufficient contacts with the State of South Carolina to be subject to the jurisdiction of its courts. To do so would place a burden upon the defendant inconsistent with "traditional notions of fair play and substantial justice."

REVERSED.