Robert H. YOUNG and EDX
Holdings, Inc., Plaintiffs,

v.

Raymond JONES, William Ruth, Alfred Martin, General Bennett, Tom Whelan, Claude Surface, Con Fecher, Ed Hughes, Helen Cork, William Eaxley, Tom Ruhf, George Strickland, Ann Grossheusch, Cathy McGill, other possible officers and directors of Hilton Head Bank and Trust, N.A., after July 1988, not yet ascertained, the Federal Deposit Insurance Corporation in its corporate capacity, and Price Waterhouse, Defendants.

Civ. A. No. 2:92–0308–1.

United States District Court,
D. South Carolina,
Beaufort Division.

Oct. 16, 1992.

George Hunter McMaster, Thompkins & McMaster, Martin Baron Stanton, Columbia, SC, for plaintiffs.

Michael S. Seekings, Robertson & Sinkler, G. Dana Sinkler, Warren & Sinkler, Charleston, SC, for defendants.

Wistar D. Stuckey, Asst. U.S. Atty., United States Attorney's Office, Columbia, SC, Daniel F. Ross, F.D.I.C., Washington, DC, for F.D.I.C.

Jennings L. Graves, Jr., Love, Thornton, Arnold & Thomason, Greenville, SC, for Price Waterhouse–US.

Thornwell Forrest Sowell, III, Joseph Calhoun Watson, Nelson, Mullins, Riley & Scarborough, P.A., Columbia, SC, for Price Waterhouse–BAHAMAS.

### ORDER

HAWKINS, Chief Judge.

This matter is before the court on three motions. Price Waterhouse, Chartered Accountants, a Bahamian partnership (PW–Bahamas), has moved for a dismissal pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure[1], alleging that this court lacks personal jurisdiction over it as defendant in this action because PW–Bahamas has insufficient contacts with the forum to meet the constitutional requirements for due process. The PW–Bahamas' motion was filed April 1, 1992.

As a part of its motion to dismiss, PW–Bahamas has moved for judgment on the pleadings as permitted by Rule 12(c). Pursuant to Rule 12(c), if evidence outside the pleadings is considered on a motion for judgment on the pleadings, the motion shall be treated as a motion for summary judgment and disposed of pursuant to Rule 56. The parties herein conducted discovery and submitted evidence on PW–Bahamas' dismissal motion, which the court considered.

Secondly Price Waterhouse–United States (PW–US) filed a motion April 2, 1992, to be dropped as a party pursuant to Rule 21, or, in the alternative, for dismissal for failure to state a claim pursuant to Rule 12(b)(6). In July 1992, PW–US also filed a motion to be dropped as a party because certain members of the U.S. partnership are not diverse from plaintiffs.

The third motion is a motion to amend the complaint, which was filed by plaintiffs to cure the diversity problem. The proposed amendment deletes PW–US as a party defendant, but names three members of the PW–US partnership who reside in South Carolina.

The moving parties and their opponents appeared before the undersigned to present evidence and argument on all three motions on Monday, September 28, 1992.

As background, this suit arises from an investment transaction. Plaintiffs are investors from Texas who deposited over a half-million dollars in a South Carolina bank and the funds have disappeared.

PW–Bahamas issued an unqualified audit letter regarding the financial statement of Swiss American Fidelity and Insurance Guaranty (SAFIG). Plaintiffs aver that on the basis of that financial statement, they deposited $550,000.00 in a South Carolina bank. Other defendants, not involved in the motions herein, allegedly sent the money from the South Carolina Bank to SAFIG. The financial statement of SAFIG was falsified. The plaintiffs' money and its investment potential has been lost to the plaintiffs and it is for these losses that the plaintiffs seek to recover damages.

Plaintiffs' motion to amend the complaint was the last filed of the three before the court, but will be considered first. Plaintiffs contend that if their proposed amendment of parties is granted, it will moot the July motion filed by PW–US to be dropped as a party.

The complaint, as amended, would name as defendants, in relevant part:

---

1. Hereinafter all references to rules shall be in reference to the Federal Rules of Civil Procedure.

**1072**

Price Waterhouse, Chartered Accountants, a Bahamian general partnership; Lee S. Piper; Herbert C. Schulken, Jr.; Dennis J. Goginsky; and other possible individual partners of Price Waterhouse, a New York general partnership, such as are residents of South Carolina, not yet ascertained.

■ There is support for plaintiffs' position that joinder of only the South Carolina members of PW–US, and dismissal of non-diverse members of PW–US, will technically cure the defect in the pleadings that joins defendants not diverse to plaintiffs.

In 1948 the Fourth Circuit Court of Appeals opined in *Weaver v. Marcus*, 165 F.2d 862 (4th Cir.1948), that non-diverse partners may be dropped and the suit maintained against diverse partners alone when liability is joint and several. In *Weaver*, administrators of Weaver's estate sued members of a partnership, individually and as partners, for the wrongful death of the deceased. Unbeknownst to plaintiffs, one partner, Carl Marcus, was non-diverse. Upon motion to drop Carl Marcus, the court noted that because partners are jointly and severally liable for the negligent acts of agents or employees acting within the apparent scope of their authority, individual partners can be sued without requiring the joinder of other partners.

Plaintiffs also cite *South Carolina Electric & Gas Co. v. Ranger Constr. Co., Inc.*, 539 F.Supp. 578 (D.S.C.1982), as more recent support for the *Weaver* opinion. However, *S.C.E. & G.* did not involve a partnership or partners. The *S.C.E. & G.* case cited *Weaver v. Marcus* only for the proposition that it is appropriate by Rule 21 motion to drop a non-diverse tortfeasor if liability would be joint and several and the tortfeasor's presence in the suit would destroy diversity. *Id.*, 539 F.Supp. at 580.

More recently the *Weaver* decision and others similar to *Weaver*, have been criticized. Cf. *Cunard Line Ltd. v. Abney* 540 F.Supp. 657 (S.D.N.Y.1982) (criticizes *Weaver* and other cases cited therein). *Cunard Line Ltd. v. Abney* points out that permitting suit solely against diverse partners, even if liability is joint and several, is a means to sue the partnership and to circumvent the rule

that the citizenship of a partnership is determined by all partners. Therefore, while *Weaver* may not have been overruled, it is perhaps weak precedent. Furthermore, the *Weaver* court acknowledged problems not raised by the motion to drop Marcus and not resolved by the opinion:

> [w]e do not think it necessary here to consider or decide, if judgment is obtained here by plaintiffs with [the non-diverse partner] dropped as a party, the extent to which the judgment would be binding on [him] under the doctrine of res adjudicata, or whether under such a judgment, execution could be levied on all the assets of the partnership.

*Weaver v. Marcus*, 165 F.2d at 865. These problems have yet to be resolved by case law.

Therefore, this court is not convinced that the assertion of subject matter jurisdiction over the South Carolina partners of PW–US herein would rest on solid ground in light of plaintiffs failure to allege any wrongdoing by any of the partners as individuals, but only against the partnership, vicariously.

The first cause of action alleged in the amended complaint is that the Bahamian accounting firm negligently performed an audit and negligently released an audit letter upon which the plaintiffs relied to their detriment. There are no allegations that PW–US, or any individual U.S. partner who resides in South Carolina, was involved in the subject transaction. The only connection between the allegations of negligence and the U.S. firm are conclusory allegations that the Bahamian partnership and the U.S. partnership operate as a partnership, or in the alternative, are a partnership by estoppel.

PW–US vigorously opposes the amendment because there are no allegations of wrongdoing by any member of the stateside partnership who resides in South Carolina. Additionally, PW–US argues that the amendment would not change the position of PW–US that the pleadings fail to state a claim against PW–US or any of its partners, individually, wherever residing. Defense counsel urged the court to consider its motion for dismissal whether on behalf of PW–US as

named in the original complaint or on behalf of the South Carolina partners of PW–US as named in the amended complaint.

In response, plaintiffs' counsel argued at hearing that it would be procedurally irregular to grant the motion to amend but then allow counsel for PW–US to argue for dismissal for failure to state a claim on behalf of the South Carolina partners alone, without requiring the new defendants to assert their own 12(b) motions. Plaintiff's counsel urged the court to amend the pleadings but to require PW–US to argue its Rule 12(b)(6) motion at some later date when a "new" motion could be filed on behalf of the South Carolina partners individually.

During hearing plaintiffs' counsel acknowledged that he received discovery on the partnership issues during the first week of August 1992. He did not contradict counsel for PW–US's statement that he had not complained as to the completeness of the response. Plaintiffs' counsel claims that he did not review the discovery on the issue of vicarious liability between the two entities prior to the hearing because a formal dismissal motion on behalf of the South Carolina partners alone had not been filed. The court notes that it was the plaintiffs who first raised this issue of vicarious liability between the two Price Waterhouse entities in response to PW–US and PW–Bahamas' motions in May, 1992 and plaintiffs have had ample time to study the issue. See, Plaintiffs' Request for Enlargement of Time To Respond to Two Price Waterhouse Motions to Dismiss, filed May 7, 1992.

Nonetheless, as a general rule amendment should be liberally granted. Rule 15(a), Federal Rules of Civil Procedure. In this particular case, there seems to be no reason not to permit the amendment, because whether the pleadings are as originally filed or as amended the posture of the PW–US partnership is the same.

In addition, the court finds that there would be no prejudice to plaintiffs should the court consider PW–US's motion for dismissal pursuant to Rule 12(b)(6) on behalf of the South Carolina partners now rather than at a later date. No hardship will befall plaintiffs because the motions have been on file for

months and the parties have been afforded an opportunity for discovery on the issues presented therein. Therefore, the court grants defense counsel's oral motion to consider PW–US's written 12(b)(6) motion on behalf of the South Carolina partners of PW–US remaining after the amendment of the complaint.

Those issues resolved, the court returns to the remaining motions, now being considered in light of the facts as alleged in the amended complaint, which are: PW–Bahamas' motion to dismiss for lack of personal jurisdiction; and, PW–US's motion, on behalf of the South Carolina partners, to dismiss for failure to state a claim.

■ PW–Bahamas has moved for dismissal for a lack of personal jurisdiction. A determination of whether this court may exercise personal jurisdiction over a non-resident defendant requires a two-step analysis. First, the court must determine if the non-resident defendant's conduct meets the requirements of the South Carolina long-arm statute, which is found at S.C.Code Ann. § 36–2–803. Second, the court must determine if the non-resident defendant had sufficient contacts with the forum state to meet the constitutional standards of due process. *Hammond v. Butler, Means, Evins & Brown*, 300 S.C. 458; 388 S.E.2d 796 (1990) (citing *Hume v. Durwood Medical Clinic, Inc.*, 282 S.C. 236, 318 S.E.2d 119 (Ct.App. 1984)).

■ South Carolina's long-arm statute extends to the constitutional limits imposed by the due process clause. *Triplett v. R.M. Wade & Co.*, 261 S.C. 419, 200 S.E.2d 375, 379 (1973); *see also,* S.C.Code § 36–2–803. As a result, the state law analysis collapses into the constitutional analysis. Therefore, the question is simply whether the defendant, in this case PW–Bahamas, has sufficient "minimum contacts" with South Carolina such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). As the

Supreme Court has traditionally noted: "it is essential in each case that there be. some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Plaintiffs' allege that an unqualified audit letter concerning a financial statement of an association, SAFIG, was issued by a Bahamian accounting office. The letterhead identified the Bahamian accounting firm only as "Price Waterhouse." The audit letter also bore a Price Waterhouse trademark and was signed "Price Waterhouse."

Plaintiffs assert that it was foreseeable to the accounting firm that issued the letter that third-parties would rely upon the financial statement, the subject of the audit letter. According to the plaintiffs, the stamp of approval created by Price Waterhouse's audit letter of SAFIG's financial statement lent credence to the defrauders' claims so that plaintiffs were induced to invest to their detriment.

The Plaintiffs' argument as to PW–Bahamas' jurisdictional contact can be distilled to its essential elements as such: PW–Bahamas audited the financial statement of a company that had its sole asset located in South Carolina; thus, it was foreseeable to PW–Bahamas that it could be haled into court in South Carolina.

In rebuttal, PW–Bahamas proffers the affidavit of Thomas F. Hackett, a partner in PW–Bahamas. PW–Bahamas asserts a lack of minimum contacts with the forum state such that the exercise of personal jurisdiction over PW–Bahamas would offend traditional notions of substantial justice and fair play.

Mr. Hackett attests that PW–Bahamas is a partnership organized and existing under the laws of the Bahamas. He further alleges that the partnership is not now, nor has it ever been, organized or incorporated under the laws of the State of South Carolina; moreover, the partnership has never been registered here with the Secretary of State.

Further, PW–Bahamas declares that it has no offices, agents, or employees and no property, real or personal, located within the State of South Carolina and it has not engaged in business within the state. Additionally, PW–Bahamas insists that no one has ever traveled to the State of South Carolina to conduct business on behalf of PW–Bahamas. Finally, PW–Bahamas contends that it has never contracted to supply services in the State of South Carolina, nor has it entered into any contract to be performed in whole or in part in South Carolina.

Plaintiffs have submitted, as evidence of PW–Bahamas's contact with South Carolina, a form that was submitted to the South Carolina bank to confirm the deposits of the Swiss association. The form was to be returned upon completion to PW–Bahamas. There is no evidence that PW–Bahamas mailed the form to the bank; however, there is some evidence that the form was completed and the information contained therein was used by the accounting firm to substantiate its audit of SAFIG's financial statement.

Plaintiffs also offer a memo, which purportedly transmitted a copy of the Price Waterhouse audit letter to Mr. Paul Knowles, whose address is in Nassau, Bahamas, but whose connection with this case was not made known to the court. The memo was prepared by an unidentified author on stationary that bears no identifying marks as to origin and the memo names two members of the firm of Price Waterhouse in the Bahamas as having participated in the preparation of the audit letter on the financial statement of SAFIG. The memo suggests that there was some contact between PW–Bahamas and the South Carolina bank in the receiving of information from the bank that SAFIG had a deposit in excess of $12 million in South Carolina.

PW–Bahamas does not deny that it prepared the audit letter. Furthermore, PW–Bahamas does not deny that it received information verifying the SAFIG deposit in the South Carolina bank.

Although, it may have been foreseeable that the audit letter of the financial statement would be relied upon by investors, there is no evidence that PW–Bahamas had any contact with the plaintiffs other than to

have had the audit letter shown to them. There is no evidence that PW–Bahamas had any contact with the forum other than the verification of the bank deposit for the audit letter. "[F]oreseeability alone ... has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566 (1980). Even if plaintiffs could prove that they invested solely on the basis of the audit letter's confirmation that $12 million dollars was deposited in a South Carolina bank, PW–Bahamas single act of preparing the audit letter does not supply sufficient contact with South Carolina to confer personal jurisdiction. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* 357 U.S. at 253, 78 S.Ct. at 1239–40.

The minimum contacts test requires that the defendant have had sufficient contact with the forum state such that he could foreseeably have expected to have been sued within the forum. PW–Bahamas connection with the South Carolina bank in which it attempted to obtain verification of the balance on deposit in an account is not tantamount to a solicitation of business in South Carolina or a purposeful availment to the privilege of conducting business in South Carolina. See, *Hanson v. Denckla,* 357 U.S. 235, 251–253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

Given the fact that matters outside the pleadings have been considered for a determination of this motion to dismiss and discovery as to the jurisdictional issue has taken place, the plaintiffs bear the burden of proving by a preponderance that the court's exercise of jurisdiction is proper. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). Plaintiffs' proffer of evidence is inadequate to demonstrate "minimum contacts" with the forum sufficient to meet the test of due process. Accordingly, the court finds that there are insufficient contacts with the forum for this court to exercise personal jurisdiction over PW–Bahamas. However, plaintiffs assert a unique argument that the contacts of the PW–US partnership should be considered contacts by the PW–Bahamas' firm, because allegedly, the two are either a partnership in fact, or a partnership by estoppel. Accordingly, the court will address the partnership allegations and the evidence submitted on that issue.

Plaintiffs assert that PW–Bahamas and PW–US operate as a partnership, i.e., constitute an association of persons to carry on, as owners, business for profit. In the alternative, plaintiffs contend that if the two associations are not actually operating as partners they are operating as partners by estoppel.

Defendants PW–US and PW–Bahamas flatly deny that a partnership exists between the two entities and have supplied, under seal, copies of relevant documents executed which establish that the two entities are separately organized. Counsel for plaintiffs admits that he has found nothing which establishes that the two entities are partners in fact. The evidence presented wholly belies plaintiffs claims that PW–Bahamas and PW–US are operating as a partnership in fact. Thus, the court finds that there is no partnership, in fact, between PW–Bahamas and PW–US.

■ Then, plaintiffs make a double-edged argument that PW–US is a partner by estoppel of PW–Bahamas. On the one hand, the argument is that if the two partnerships are partners by estoppel, then the court has personal jurisdiction over PW–Bahamas, as PW–US's partner by estoppel, because PW–US has at least "minimum contacts" with South Carolina. On the other hand, the argument for estoppel seems to be that if the two partnerships are partners by estoppel then PW–US can be held liable for the negligent acts of its partner PW–Bahamas, so the claim against PW–Bahamas operates as a claim against PW–US. Therefore, the court will review the evidence that plaintiffs have presented on the issue of partnership by estoppel on both the Rule 12(b)(2) motion presented by PW–Bahamas and the Rule 12(b)(6) motion presented by PW–US.

As a general rule, persons who are not partners as to each other are not partners as to third persons. S.C.Code Ann. § 33–41–220 (Law.Co-op 1976). However, a person who represents himself, or permits another

to represent him, to anyone as a partner in an existing partnership or with others not actual partners, is liable to any such person to whom such a representation is made who has, on the faith of the representation, given credit to the actual or apparent partnership. S.C.Code Ann. § 33–41–380(1). This exception to the general rule for liability by partners by estoppel is statutorily created under the Uniform Partnership Act in the version adopted by the State of South Carolina.

Generally, partners are jointly and severally liable for everything chargeable to the partnership. S.C.Code Ann. § 33–41–370. In South Carolina, a partnership is an entity separate and distinct from the individual partners who compose it. *South Carolina Tax Comm. v. Reeves,* 278 S.C. 658, 300 S.E.2d 916 (1983). Therefore, plaintiffs' argument is that if the court would find that PW–Bahamas and PW–US are partners by estoppel, PW–US would be jointly and severally liable with PW–Bahamas for everything chargeable to the partnership of the two firms. Moreover, if the two partnerships are partners by estoppel, the individual partners of PW–US would then be jointly and severally liable for the negligent acts of the PW–Bahamas partnership.

Plaintiffs maintain that Price Waterhouse holds itself out to be a partnership with offices around the world. According to the plaintiffs, the U.S. affiliate makes no distinction in its advertising between itself and entities situated in foreign jurisdictions. The foreign affiliates are permitted to use the Price Waterhouse name and trademark. Plaintiffs urge the conclusion of partnership by estoppel from the combination of facts that Price Waterhouse promotes its image as an organization affiliated with other Price Waterhouse offices around the world and that it is common knowledge that the accounting firm of Price Waterhouse operates as a partnership.

Plaintiffs offer for illustration that PW–Bahamas and PW–US hold themselves out to be partners with one another, a Price Waterhouse brochure, picked up by plaintiffs' counsel at a litigation services seminar, that describes Price Waterhouse as one of the "world's largest and most respected profes-

sional organizations." The brochure states: "[O]ver 28,000 Price Waterhouse professionals in 400 offices throughout the world can be called upon to provide support for your reorganization and litigation efforts." Plaintiffs assert that assurances like that contained in the brochure cast Price Waterhouse as an established international accounting firm and that the image, promoted by PW–US, is designed to gain public confidence in the firm's stability and expertise.

However, the plaintiffs do not contend that the brochure submitted was seen or relied on by them in making the decision to invest. In addition, plaintiffs point to nothing in the brochure that asserts that the affiliated entities of Price Waterhouse are liable for the acts of another, or that any of the affiliates operate within a single partnership.

To bolster their argument, Plaintiffs sought to discover certain documents filed in a 1980 suit, entitled *Cross v. Price Waterhouse,* which resulted in a September 27, 1982, order. The court in *Cross* allegedly found that the U.S. partnership of Price Waterhouse was vicariously liable for negligence of the Bahamas firm of Price Waterhouse.

Defendant PW–US supplied copies of the relevant *Cross* documents which showed that the order of Judge Pratt was later vacated. Furthermore, PW–US informs the court that during the period in question in the *Cross* case, there were licensing agreements between the U.S. partnership and the Bahamian partnership for use of the name and trademark on which the decision was based. Such licensing agreements are no longer in existence.

PW–US points out that the South Carolina statute, which was cited by plaintiffs in support of their argument for partnership by estoppel, speaks only to the creation of liability to third-persons who, in reliance upon representations as to the existence of a partnership, "[give] credit" to that partnership. S.C.Code Ann. § 33–41–380(1) (Law.Co-op 1976). There is no evidence, neither has there been an allegation, that credit was extended on the basis of any representation of a partnership existing between PW–Bahamas and the South Carolina members of the

PW–US partnership. There is no evidence of any extension of credit to the either PW–Bahamas or PW–US, by plaintiffs. Thus, the facts do not support a finding of liability for partners by estoppel under the statutory law of South Carolina.

Further, there is no evidence that plaintiffs relied on any act or statement by any PW–US partner which indicated a the existence of a partnership with the Bahamian partnership. Finally, there is no evidence, nor is there a single allegation that any member of the U.S. partnership had anything to do with the audit letter complained of by plaintiffs, or any other act related to the investment transaction.

The court cannot find any evidence to support a finding of partners by estoppel. Therefore, the allegations of negligence against PW–Bahamas cannot serve to hold individual members of the PW–US partnership in the suit. Without PW–US' contacts with the forum, there are insufficient contacts with South Carolina for PW–Bahamas to reasonably expected to have been haled into court here.

For the reasons hereinabove stated, the court hereby grants the plaintiff's motion to amend the complaint to join the U.S. partners of Price Waterhouse who reside in South Carolina.

Further, the court hereby grants PW–Bahamas' motion to dismiss for lack of personal jurisdiction.

Further, the court dismisses the three South Carolina partners of PW–US, and those yet ascertained, for failure to state a claim against them upon which relief can be granted.

IT IS SO ORDERED.